M. Michele COOK, Plaintiff,

v.

CITY OF MINNEAPOLIS, George T. Caldwell, Director of the Minneapolis Department of Civil Rights, and Gene Robinson, Employee of the Minneapolis Department of Civil Rights, Defendants.

No. 3–84 CIV 425.

United States District Court,
Dist. Minnesota,
Third Division.

Aug. 16, 1985.

Dunkley and Bennett, P.A. by Michael D. Madigan, Minneapolis, Minn., for plaintiff.

Robert J. Alfton, City Atty. by Scott Reeves, Asst. City Atty., Minneapolis, Minn., for defendants City of Minneapolis and George T. Caldwell.

Kudak and Associates, P.A. by David G. Kudak, Minneapolis, Minn., for defendant Gene Robinson.

## MEMORANDUM ORDER

ALSOP, Chief Judge.

This matter comes before the court upon the motion of defendants City of Minneapolis (City) and George Caldwell (Caldwell) for summary judgment pursuant to Fed.R.Civ.P. 56.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The factual allegations underlying this action arise from plaintiff M. Michele Cook's (Cook) dealings with the Minneapolis Department of Civil Rights during the fall of 1980. On October 7, 1980, Cook filed an employment discrimination claim with the Minnesota Department of Human Rights. The claim was turned over to the Minneapolis Department of Civil Rights, an agency of defendant City of Minneapolis (City), for investigation. Defendant Gene Robinson (Robinson), an employee of the Minneapolis Department of Civil Rights, was assigned to investigate Cook's claim. On December 11, 1980, Robinson contacted Cook about her claim and arranged for a meeting. Later that evening, Robinson and Cook met in Robinson's car at a secluded location. At that time, Robinson allegedly "attacked, battered, assaulted, and raped Ms. Cook in his car." Complaint

¶ 11. Thereafter, "Robinson told Ms. Cook never to tell anyone about the rape because no one would believe her and because her discrimination claim would go nowhere if she did." *Id.* During all relevant times, defendant George T. Caldwell (Caldwell) was Director of the Minneapolis Department of Civil Rights.

Cook filed this action on March 30, 1984. In her complaint, Cook alleges seven causes of action. The first through the fourth causes of action present state law claims against Robinson. The fifth cause of action presents a state law claim for negligence against the City and Caldwell. The sixth cause of action also presents a state law negligence claim against the City and Caldwell, specifying that "[d]efendants improperly employed, failed to supervise and failed to train Defendant Robinson." *Id.* ¶ 39. The seventh cause of action is brought pursuant to 42 U.S.C. § 1983. Cook alleges that the "actions of Defendants deprived Ms. Cook of her rights, privileges, and immunities secured by the Constitution and laws." Complaint ¶ 44. Although the complaint does not specify the "right, privilege or immunity" violated by defendants' action, plaintiff's counsel conceded at oral argument that Cook's only claim against the City and Caldwell under § 1983 arises from an alleged violation of her liberty interests protected by the fourteenth amendment due process clause.

The City and Caldwell raise three arguments in their summary judgment motion: (1) plaintiff's § 1983 claim is barred by the statute of limitations, (2) plaintiff's § 1983 due process claim must be dismissed because an adequate postdeprivation remedy exists under state law, and (3) plaintiff has failed to plead or prove a custom or policy of the City which caused a deprivation of a right, privilege or immunity actionable under § 1983.

## II. STATUTE OF LIMITATIONS

### A. Applicable Statute of Limitations

■ Section 1983, like other federal statutes, does not contain a specific statute of limitations. In such instances, courts are instructed to select and apply the most appropriate or analogous state statute of limitations if it is not inconsistent with federal law or policy to do so. 42 U.S.C. § 1988; *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). Using this analytical framework, the Eighth Circuit has held that in Minnesota, the six-year limitations period for statutory actions, Minn.Stat. § 541.05 subd. 1(2) (1984), applies to actions arising under § 1983. *Occhino v. United States,* 686 F.2d 1302, 1307–08 (8th Cir.1982).

■ The Supreme Court's recent decision in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), requires a re-evaluation of the *Occhino* court's selection of a Minnesota limitations period for § 1983 actions. In *Wilson v. Garcia,* the Supreme Court held that § 1983 claims are best characterized as personal injury actions for statute of limitations purposes. 105 S.Ct. at 1947. According to the Court, this characterization is supported by the nature of the § 1983 remedy and by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy. *Id.* at 1947–49. The task now before this court, in light of *Wilson v. Garcia,* is "to select, in [Minnesota], the one most appropriate statute of limitations for all § 1983 claims." *Id.* at 1947. The issue is one of first impression in Minnesota.

The selection of a state statute of limitations applicable to personal injury actions should be an easy chore. In many states, there is but one statute of limitations governing personal injury actions. *See, e.g., Wilson v. Garcia, supra,* 105 S.Ct. 1938 (New Mexico); *Smith v. City of Pittsburgh,* 764 F.2d 188 (3d. Cir.1985) (Pennsylvania); *Winston v. Sanders,* 610 F.Supp. 176 (C.D.Ill.1985) (Illinois). The task becomes complicated, however, in states like Minnesota where more than one statute of limitations govern personal injury actions.

The parties argue, and the court agrees, that a choice must be made between two Minnesota statutes. Plaintiff favors Minn.

Stat. § 541.05 subd. 1(5) (1984), a six-year statute "for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated; ..." Defendants favor Minn.Stat. § 541.-07(1) (1984), a two-year statute "[f]or libel, slander, assault, battery, false imprisonment, or other tort resulting in personal injury...." The Minnesota Supreme Court has long held that Minn.Stat. § 541.-07(1), the two-year statute, applies to intentional tort actions, whereas Minn.Stat. § 541.05 subd. 1(5), the six-year statute, applies to negligence actions. *See American National Liability Insurance Co. v. Reed Cleaners*, 265 Minn. 503, 122 N.W.2d 178, 180 (1963); *Villaume v. Wilkinson*, 209 Minn. 330, 296 N.W. 176 (1941); *Brown v. Village of Heron Lake*, 67 Minn. 146, 69 N.W. 710 (1897). The relative positions of the parties is not surprising. Plaintiff's cause of action arose on December 11, 1980; the complaint was filed over three years and three months later on March 30, 1984. Thus, the action would be barred by the two-year statute, absent an estoppel as advocated by plaintiff, whereas under the six-year limitations period, the action is timely.

The United States Court of Appeals for the Eleventh Circuit faced a similar dilemma in *Jones v. Preuit & Mauldin*, 763 F.2d 1250 (11th Cir.1985). In *Jones*, a post-*Wilson* case, the Eleventh Circuit was required to choose the one Alabama limitations statute governing claims for recovery of damages for personal injury that federal courts should borrow for purposes of § 1983. As in the instant action, two Alabama statutes govern the limitations period for bringing personal injury suits, a six-year statute for intentional tort actions and a one-year statute for negligence actions. 763 F.2d at 1253–54. The choice of the proper and analogous state statute, for purposes of § 1983 claims, depends initially on whether the personal injury that is the essential nature of all § 1983 claims is more like an intentional tort action or a negligence action. *Id.* at 1254. The Eleventh Circuit concluded that the characterization of § 1983 claims given by the Supreme Court

in *Wilson* resembles an action in intentional tort rather than negligence. *Id.* Nevertheless, nothing in the language or legislative history limits § 1983 solely to intentional deprivations of constitutional rights. Some § 1983 claims sound in intentional tort and others in negligence. *Id.* at 1255. Thus, the Eleventh Circuit concluded in *Jones* that the essential nature of a § 1983 personal injury claim cannot be determined simply by asking which of the state law causes of action for personal injury, such as intentional tort or negligence, could also be brought under § 1983. *Id.*

Instead, the Eleventh Circuit shifted its inquiry in *Jones*. "The appropriate characterization of Section 1983 personal injury claims must be determined by searching the legislative history of the statute and isolating the particular type of wrong that was most paradigmatic, the one category of wrongs that the legislators intended first and foremost to address." *Id.* The Eleventh Circuit then analyzed the extensive legislative history of the Civil Rights Act of 1871. That review demonstrates that Congress considered intentional and direct acts of violence on the part of the Ku Klux Klan against black citizens in the Reconstruction South to be the paradigmatic wrong addressed by § 1983. *Id.* at 1255–56; *see also Wilson v. Garcia, supra*, 105 S.Ct. at 1947–48. Even in the modern era, based upon this court's own experiences with civil rights actions, personal injuries based upon intentional acts make up the most significant subset of claims brought under § 1983. *See also Jones v. Preuit, supra*, 763 F.2d at 1255.

In *Jones*, the Eleventh Circuit concluded, on the basis of congressional intent and the Supreme Court's opinion in *Wilson v. Garcia*, that a § 1983 claim should be characterized as a personal injury action along the lines of an intentional tort, and would thus be subject to the Alabama statute of limitations for intentional torts. 763 F.2d at 1256. This court finds the Eleventh Circuit's analysis in *Jones* persuasive and analogous to the instant action, and likewise concludes that a § 1983 claim should

be characterized as a personal injury action along the lines of an intentional tort for statute of limitations purposes. Accordingly, for § 1983 claims brought in Minnesota, this court will borrow the two-year limitations period of Minn.Stat. § 541.07(1).

### B. Retroactivity

■ The choice of the applicable Minnesota limitations period for § 1983 claims does not end the court's inquiry. The court's holding above was dictated by the Supreme Court's April 17, 1985 decision in *Wilson v. Garcia, supra,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254. Thus, Minnesota's two-year statute of limitations would apply to a § 1983 action based upon a cause arising subsequent to *Wilson.* The instant action, however, arises from incidents occurring prior to the *Wilson* decision. In addition, this action was filed prior to *Wilson.* Thus, the court must now decide whether *Wilson* should be applied retroactively. Because plaintiff's action was filed more than three years and three months after the cause arose, the action is saved only if *Wilson* applies prospectively. Although the parties have not addressed the issue of the retroactive application of *Wilson,* it is incumbent upon the court to confront the issue here.

The retroactive effect of *Wilson v. Garcia* is not analyzed in Justice Stevens's opinion for the Supreme Court. Subsequently, lower courts have split on the issue. *Compare Smith v. City of Pittsburgh,* 764 F.2d 188 (3d Cir.1985) (applies *Wilson* retroactively in Pennsylvania) *with Winston v. Sanders,* 610 F.Supp. 176 (C.D. Ill.1985) (applies *Wilson* prospectively in Illinois). *See also Jackson v. City of Bloomfield,* 731 F.2d 652, 654 (10th Cir. 1984) (en banc) (applies *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984) (en banc), *aff'd Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) prospectively in New Mexico); *Abbitt v. Franklin,* 731 F.2d 661, 663 (10th Cir.1984) (en banc) (applies *Garcia* prospectively in Oklahoma).

The Supreme Court has outlined three factors relevant to the nonretroactive application of judicial decisions.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (citations omitted). This "approach has been utilized where changes in statutes of limitations or other aspects of the timeliness of a claim are at issue." *Occhino v. United States,* 686 F.2d 1302, 1308 n. 7 (8th Cir.1982).

■ The first prong of the *Chevron* analysis is whether *Wilson v. Garcia* overruled a past precedent on which the parties may have relied. Prior to *Wilson,* the Eighth Circuit had held "that where the § 1983 claimant alleges acts which may constitute both a state tort and the deprivation of a constitutional right, the appropriate statute of limitations is not that which applies to state tort actions." *Occhino v. United States, supra,* 686 F.2d at 1307, *citing Garmon v. Foust,* 668 F.2d 400, 406 (8th Cir.1982). In *Occhino,* the Eighth Circuit specifically applied Minnesota's six-year limitations period for statutory actions, Minn.Stat. § 541.05 subd. 1(2) (1982), rather than Minnesota's two-year limitations period for intentional torts, Minn.Stat. § 541.07(1) (1982), to § 1983 actions. *Occhino v. United States, supra,* 686 F.2d at

1307–08; *see also Garmon v. Foust, supra,* 668 F.2d at 406 n. 11 ("period of limitations for actions based upon liability created by statute ... may appropriately govern an unlimited federal civil rights action"). Clearly, *Wilson v. Garcia* overrules past precedents of the Eighth Circuit as embodied in *Occhino* and *Garmon.*

The inconsistency between *Wilson* and *Occhino* weighs heavily against the retroactive application of *Wilson.* This conclusion is consistent with the results reached in other circuits where courts have declined to apply *Wilson* retroactively because plaintiffs could justifiably have relied upon contrary prior precedent in those circuits. *See, e.g., Winston v. Sanders, supra,* 610 F.Supp. at 178, *cf. Jackson v. City of Bloomfield, supra,* 731 F.2d at 654 (prospective application of 10th Circuit's decision in *Garcia*); *Abbitt v. Franklin, supra,* 731 F.2d at 663 (same result as *Jackson v. City of Bloomfield*). The Third Circuit's contrary conclusion on this factor in *Smith v. City of Pittsburgh, supra,* 764 F.2d at 194–95, is distinguishable because there was no definitive ruling on the appropriate Pennsylvania statute of limitations prior to the time that plaintiff filed suit.

The second *Chevron* factor requires an examination of the purposes of the rule announced in *Wilson v. Garcia.* The Supreme Court's decision in *Wilson* promotes many purposes. The decision was designed to promote the broad remedial purpose of § 1983 and the policies of repose embodied in statutes of limitations. *Wilson v. Garcia, supra,* 105 S.Ct. at 1945. In addition, "federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support" the Court's result in *Wilson. Id.* at 1947. This court "cannot say that retrospective application to bar plaintiff's claims at this point in the litigation would either hamper or promote these goals." *Jackson v. City of Bloomfield, supra,* 731 F.2d at 655; *accord Smith v. City of Pittsburgh, supra,* 764 F.2d at 196.

The final factor in the *Chevron* test asks whether retroactivity would result in substantial inequities in the action. At the time this action was filed, *Occhino v. United States, supra,* 686 F.2d 1302, stood for the proposition that Minnesota's six-year limitations period for statutory actions governed § 1983 claims. Plaintiff was therefore justified in relying on *Occhino* to conclude that her action was timely. A retroactive application of *Wilson,* in contrast, would bar plaintiff's action. Such a result would be unjust and would "foreclose this Plaintiff from her day in court in regard to her complaint under § 1983." *Winston v. Sanders, supra,* 610 F.Supp. at 179. This court "will not bar plaintiff's right to [her] day in court when [her] action was timely under the law in effect at the time [her] suit was commenced." *Jackson v. City of Bloomfield, supra,* 731 F.2d at 655.

Based upon a consideration of the *Chevron* factors, this court concludes that the command of *Wilson v. Garcia* that § 1983 claims be characterized as personal injury actions for limitations purposes should not be applied retroactively in this action. By applying *Wilson* prospectively, this court holds that plaintiff's § 1983 claim is not time barred.

### III. POSTDEPRIVATION REMEDIES

Defendants City and Caldwell argue next that plaintiff Cook's § 1983 due process claim must be dismissed because an adequate postdeprivation remedy exists under state law. Viewing plaintiff's complaint in the light most favorable to plaintiff, Cook's § 1983 claim alleges a deprivation of a liberty interest without due process of law in violation of the fourteenth amendment to the United States Constitution. Plaintiff's counsel, as noted above, agreed at oral argument with this characterization of Cook's § 1983 claim.

In *Hanson v. Larkin,* this court recently held that "when a state provides an adequate, postdeprivation remedy in tort for an unauthorized, intentional deprivation of a liberty interest, that remedy itself constitutes the due process required by the fourteenth amendment." 605 F.Supp. 1020, 1025 (D.Minn.1985) (Alsop,

J.). Under the *Hanson* rationale, an intentional deprivation of a liberty interest does not violate the fourteenth amendment due process clause when the deprivation results from a "random and unauthorized act" by a state official, a predeprivation hearing is impossible, and the state provides an adequate postdeprivation remedy. *Id.* at 1025–26. The analysis underlying *Hanson* need not be repeated here. *See generally Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Thibodeaux v. Bordelon,* 740 F.2d 329 (5th Cir.1984); *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984), *reh'g en banc granted,* 737 F.2d 912 (1984).

■ The court concludes that *Hanson* is analogous to the factual allegations of the instant action. Cook's claim of a liberty deprivation arises from defendant Robinson's alleged intentional acts of sexual misconduct. This sort of deprivation resulted from a "random and unauthorized act," exactly the kind of state action to which *Hanson* applies.

Cook, however, argues that her claim does not involve random and unauthorized acts. Instead, Cook contends that the allegedly negligent supervision of Robinson by the City and Caldwell was neither random nor unauthorized, but was the official policy of the Minneapolis Department of Civil Rights. The court finds plaintiff's position untenable. Even assuming that the City and Caldwell were negligent in supervising Robinson, and that their negligence constituted a City policy, Robinson's alleged acts of sexual assault were neither calculated by the City or Caldwell, nor dictated by City policy. On the contrary, the City cannot "anticipate and control in advance the random and unauthorized intentional conduct of its employees. . . ." *Hudson v. Palmer, supra,* 104 S.Ct. at 3203. Robinson's alleged sexual assault of Cook is precisely the kind of random and unauthorized act contemplated by *Hanson.*

In protecting against the alleged liberty deprivation at issue here, it was impossible for Minnesota to provide an adequate, predeprivation due process hearing. Thus, under the *Hanson* analysis, the court must now determine whether the postdeprivation tort remedies of the State of Minnesota available to Cook satisfy due process.

As to the conduct of Robinson, Minnesota law provides adequate postdeprivation remedies. Sexual misconduct is actionable in tort as an assault and battery under Minnesota law. *See Patzwald v. Patrick,* 188 Minn. 557, 248 N.W. 43 (1933); *Frey v. McManus,* 154 Minn. 175, 191 N.W. 392 (1923). Minnesota also provides an independent cause of action for the tort of intentional infliction of emotional distress. *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 437–40 (Minn.1983); *see also Langeland v. Farmers State Bank of Trimont,* 319 N.W.2d 26, 31–33 (Minn.1982) (no recovery for negligent infliction of emotional distress absent showing of physical injury or physical danger).

■ With respect to defendant Caldwell, it appears from the complaint and from the argument of counsel that he is being sued in his official capacity and not individually. Under § 1983, a judgment against a public servant in his official capacity imposes liability on the entity that he represents, provided the public entity received notice and an opportunity to be heard. *Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). Thus, the postdeprivation remedies available against Caldwell are the same as those available against the City.

■ With respect to the City, Minn.Stat. § 466.02 (1984) provides in part that "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Thus, Cook has a postdeprivation remedy against the City for any torts committed by

Robinson within the scope of his employment.

Cook does not claim, nor does it appear otherwise, that the remedy against the City is inadequate. This court therefore concludes that the State of Minnesota provides an adequate postdeprivation remedy in tort for the intentional deprivation of a liberty interest at issue in this action. This remedy constitutes the due process required by the fourteenth amendment. Accordingly, Cook's § 1983 due process claim against the City and Caldwell will be dismissed.

## IV. CITY CUSTOM OR POLICY

Finally, defendants City and Caldwell argue that plaintiff has failed to plead or prove a custom or policy of the City which caused a deprivation of a "right, privilege or immunity" actionable under § 1983. Given the court's holding on the postdeprivation remedy issue, this argument need not be addressed. Nevertheless, the court finds merit in defendants' argument and will therefore discuss this issue because it provides an alternative basis for dismissing plaintiff's § 1983 claim against the City and Caldwell.

The analysis which follows presumes, for the sake of argument, that Cook has established a deprivation of a constitutional right. In order to hold the City and Caldwell liable under § 1983, however, Cook must also establish that the City and Caldwell were the persons who caused Cook to be subjected to the deprivation. In *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipal liability under § 1983 could only be imposed for injuries inflicted pursuant to government "policy or custom." *Id.* at 694, 98 S.Ct. at 2037.

Defendants City and Caldwell contend that Cook has failed to allege or prove a municipal policy or custom of the City which subjects them to liability under § 1983. Defendants rely primarily upon the Supreme Court's recent decision in *City of Oklahoma City v. Tuttle,* — U.S. —, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In

*Tuttle,* the widow of a man shot by a police officer brought a § 1983 action against the officer and his employer city. The Court held that it was reversible error to instruct the jury that they could infer from a single unusually excessive use of force that it was attributable to inadequate training or supervision amounting to deliberate indifference or gross negligence on the part of the officials in charge.

Writing for the plurality, Justice Rehnquist explains the relationship between a single incident of unconstitutional activity and municipal policy or custom:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise, the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*Id.,* 105 S.Ct. at 2436 (footnotes omitted). In regard to causation, the plurality opinion observed:

> The fact that a municipal "policy" might lead to "police misconduct" is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the "moving force" behind a *constitutional* violation. There must be at least an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue.

*Id.* at 2436–37 n. 8 (emphasis in the original). The court finds the *Tuttle* plurality's analysis directly on point here.

In the instant action, Cook argues that the grossly negligent hiring, training, and supervision of Robinson constituted a custom or policy of the City which was the moving force behind the alleged depriva-

tion of constitutional rights. Robinson was employed by the Minneapolis Department of Civil Rights from May 27, 1975 through July 13, 1976 and from October 22, 1979 through October 1, 1981. Prior to his employment with the City, Robinson had been charged and convicted on various felony counts related to the passing of forged or worthless checks. Robinson had no prior record for crimes involving violence, force, or sexual assault. Up until the date of the underlying incident, only one complaint of misconduct was made against Robinson in his capacity as an investigator with the City Department of Civil Rights. It did not involve sexual misconduct. Defendant Caldwell was not involved in either the hiring or rehiring of Robinson. Based on this record, Cook contends that the City was grossly negligent in hiring, training, and supervising Robinson, and that such action constituted a policy of the City.

■ Cook has not demonstrated that the policy which purportedly subjects the City to liability under § 1983, namely, grossly negligent hiring, training, and supervision practices, is an unconstitutional policy. The court therefore concludes that the purported policy is not itself unconstitutional. In such circumstances, under *Tuttle*, considerably more proof than a single incident is necessary to establish the requisite fault on the part of the municipality. Here, Cook relies on a single incident, Robinson's alleged sexual assault, in an attempt to establish a policy of grossly negligent hiring, training, and supervision practices. No other proof of this policy has been presented by plaintiff. Based upon *Tuttle*, the court is unable to infer a municipal policy from the single incident of Robinson's alleged sexual assault.

■ Furthermore, under *Tuttle*, the court cannot rely on a single incident to establish the causal connection between the policy and the constitutional deprivation. Thus, proof of a single incident of sexual assault does not establish that the City's purported policy of negligent hiring, training, and supervision caused plaintiff's al-

leged deprivation of liberty without due process of law.

The Supreme Court's decision in *Tuttle* is dispositive of Cook's § 1983 claim against the City and Caldwell. Because Cook relies on a single incident, the court concludes that plaintiff has failed to prove a custom or policy of the City which caused a deprivation of a right, privilege or immunity actionable under § 1983. Accordingly, on this additional basis, the court will dismiss Cook's § 1983 claim against the City and Caldwell.

## V. STATE LAW CLAIMS

■ In addition to her § 1983 claim, Cook also alleges state law claims for negligence against the City and Caldwell. Because plaintiff's federal claim as to these defendants will be dismissed, federal question jurisdiction no longer exists as to the claims against these defendants. The court will therefore dismiss the remaining pendent state claims against the City and Caldwell without prejudice for lack of subject matter jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In sum, the court will grant the motion of defendants City and Caldwell for summary judgment.

Upon the foregoing, and upon all files, records and proceedings herein,

IT IS ORDERED That the motion of defendants City of Minneapolis and George Caldwell for summary judgment be and the same hereby is in all things granted.

IT IS FURTHER ORDERED That plaintiff's § 1983 claim against the City and Caldwell be and the same hereby is dismissed with prejudice.

IT IS FINALLY ORDERED That plaintiff's state law claims against the City and Caldwell be and the same hereby are dismissed without prejudice for lack of subject matter jurisdiction.