**William E. EPP, Plaintiff,**

v.

**Frank GUNTER and Charles Black, Defendants.**

**No. CV87–L–506.**

United States District Court, D. Nebraska.

Feb. 3, 1988.

---

Stanley D. Cohen, Lincoln, Neb., for plaintiff.

Elaine A. Catlin, Asst. Atty. Gen., Lincoln, Neb., for defendants.

## MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS

URBOM, District Judge.

William Epp, the plaintiff, is an inmate at the Nebraska State Penitentiary ("NSP"). He alleges that the defendants deprived him of his liberty interest without due process in violation of the fourteenth amendment and seeks a remedy under 42 U.S.C. § 1983. The defendants, the then director of the Nebraska Department of Correctional Services and the then warden of the NSP, have filed a motion to dismiss, contending that the plaintiff's claim is time-barred by the applicable statute of limitations. The defendants argue that Nebraska's one-year statute of limitations for intentional torts, Neb.Rev.Stat. § 25–208 (Reissue 1985), rather than Nebraska's four-year statute of limitations for other personal injuries, Neb.Rev.Stat. § 25–207 (Reissue 1985), should be borrowed by the federal courts for use in section 1983 actions. The defendants contend that if the one-year statute obtains, Epp's action is time-barred.

The defendants acknowledge that my previous opinions and those of the other federal judges for the district of Nebraska reflect the court's decision to borrow Nebraska's four-year limitations period under § 25–207, but they observe that this court's previous decisions, all unpublished, do not reflect any consideration of the possible application of Nebraska's shorter personal injury limitations period.

The Eighth Circuit has not been confronted with choosing between two or more, potentially applicable statutes of limitations for section 1983 claims, and the circuit courts to which the issue has been presented are divided on the proper analysis and result. A review of the issue is in order.

### Discussion

*Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), sets the stage.

It said that the nature of the section 1983 remedy and the federal interests involved demanded that the federal courts borrow the forum state's statute of limitations that governs personal injury causes of action for application in section 1983 cases. Accordingly, the Court held that the New Mexico statute of limitations for personal injuries that provided a "3-year statute of limitations governing actions 'for any injury to the person or reputation of any person'" was the appropriate New Mexico limitation period to borrow for section 1983 actions. *Id.* at 280, 105 S.Ct. at 1949, quoting N.M.Stat.Ann. § 37–1–8 (1978).

Although the Supreme Court's holding in *Wilson* established an easily applicable rule for section 1983 cases that are commenced in a forum state having only one personal injury statute of limitations, it prompted a split among those courts facing two potentially applicable personal injury statutes of limitations in a forum. In Nebraska a choice must be made between Nebraska's four-year and one-year personal injury statute. Parenthetically, I note that Nebraska has a third statutory candidate. Section 25–219 sets a three-year limitation on actions for liability created by a federal statute. None of the parties claim that § 25–219 can serve section 1983 actions in view of the *Wilson* holding.

The *Wilson* opinion's guidance is limited, because the opinion can be reasonably interpreted to achieve different results. All the circuit courts that have tackled this issue agree on one fact: *Wilson* makes it clear that only the *one* most appropriate statute of limitations of a state should be borrowed for that state's section 1983 actions. *Id.* at 275, 105 S.Ct. at 1947.

Those circuits that have borrowed the forum state's statute of limitations governing intentional torts have identified with the *Wilson* court's language referring to the Ku Klux Klan's activities as the "specific historic catalyst" of section 1983. *Id.* at 276, 105 S.Ct. at 1947. The *Wilson* Court acknowledged that the legislative history of the reconstruction era acts establishes that the Ku Klux Klan's efforts to "deny[ ] decent citizens their civil and political rights" was the primary motivation behind passage of the civil rights acts and the

court found that these types of atrocities sounded in tort. *Id.* at 276–77, 105 S.Ct. at 1947–48. To the contrary, those circuits that have chosen to borrow a more general personal injury statute of limitations from the forum state have capitalized on the *Wilson* court's language regarding the federal interest in ensuring that borrowed state limitations periods do not discriminate against plaintiffs who seek relief under the section 1983 remedy. *Id.* at 276, 105 S.Ct. at 1947.

### Favoring the Intentional Tort Analogy

Following the *Wilson* opinion, the circuit court that first had to choose between two statutes of limitations for section 1983 actions was the Eleventh Circuit. In *Jones v. Preuit & Mauldin*, 763 F.2d 1250 (11th Cir.1985), the court relied heavily upon the *Wilson* Court's discussion of the Ku Klux Klan's role in demonstrating the need for the section 1983 remedy. *Id.* at 1255–56. The Eleventh Circuit found that the 'essential nature' of a claim brought under section 1983 could be identified by "searching the legislative history of the statute and isolating the particular type of wrong that was most paradigmatic." *Id.* at 1255. The court found that the most significant group of injuries that Congress intended section 1983 to cover "were acts of intentional and direct violence on the part of the Ku Klux Klan." *Id.*

The Eleventh Circuit reasoned that the direct acts of violence against black citizens constituted the essential nature of section 1983 claims and that the essential nature was included under the description of trespass under Alabama law. Thus, the court found that actions for redress of modern section 1983 violations should be governed by Alabama's statute of limitations governing "any trespass to person or liberty, such as false imprisonment or assault and battery," rather than Alabama's one-year limitations period governing actions "for any injury to the person or rights of another ... not specifically enumerated in this section." *Id.* at 1254 quoting Ala.Code §§ 6–2–34(1), 6–2–39(a)(5)(1975).

Adhering to the reasoning in *Jones*, the Fifth Circuit in *Gates v. Spinks*, 771 F.2d 916 (5th Cir.1985), chose between two Mississippi statutes; one provided a one-year statute of limitations for most, if not all, common law intentional torts and the other provided a six-year statute of limitations for all causes of actions for which no other limitation was provided, including negligence and unintentional tort actions.

The *Gates* court agreed with the *Jones* court's analysis of the issue and found that Mississippi's statutory scheme was similar to Alabama's in that neither state had a general prescriptive statute governing all personal injury claims. *Id.* at 919. The proper starting point for analyzing the issue was found to be in recognizing Congress' dominant motivation for enacting section 1983. Agreeing with *Jones*, the Fifth Circuit acknowledged the fundamental influence that the Klu Klux Klan had on Congress when the section 1983 remedy was formulated and found that the paradigmatic wrong that prompted passage of section 1983 was the campaign of violence against black citizens.

The *Gates* court also considered the plaintiff's argument that the *Wilson* Court mandated the use of a statute of limitations for "general" personal injuries in section 1983 actions. However, the Fifth Circuit court found that Mississippi's "6–year residual statute has no more general application than the one-year statute," and determined, therefore, that the court's decision had to rest on some basis other than the word "general". *Id.* at 920. The court found that "most section 1983 actions are predicated on intentional rather than on negligent acts" and that Congress' intent in enacting section 1983 was to redress intentional misconduct. *Id.* at 920. Accordingly, the court found that the section 1983 action was more analogous to intentional torts governed by Mississippi's one-year statute than to nonintentional torts governed by the six-year statute.

The Sixth Circuit, in *Mulligan v. Hazard*, 777 F.2d 340 (6th Cir.1985), aligned itself with those courts that the Congress' enactment of section 1983 as a response to the Ku Klux Klan's violence against black citizens and found that Congress' concern was with "perpetrators of intentional tortious conduct." Accordingly, and without mention of *Jones*, the *Mulligan* court decided that suits for libel, slander, assault, battery, malicious prosecution, false imprisonment and malpractice, were more analogous to section 1983 claims than actions for other bodily injuries. Accordingly, Ohio's one-year statute was chosen over a two-year statute.

The only published opinion I have found of a court in the Eighth Circuit that has wrestled with this issue is *Cook v. City of Minneapolis*, 617 F.Supp. 461, 463 (D.Minn.1985). The choice was between a six-year statute "for any other injury to the person or rights of another, not arising on contract, and not hereinafter mentioned," and a two-year statute for "libel, slander, assault, battery, false imprisonment, or other tort resulting in personal injury." *Id.* at 464, quoting Minn.Stats. § 541.05 subd. 1(5) and § 541.07(1). The *Cook* court found the reasoning of the *Jones* court to be "persuasive and analogous to the instant action" and concluded that section 1983 claims should be characterized as "personal injury action[s] along the lines of an intentional tort for statute of limitations purposes." *Id.* at 465.

The *Cook* court rejected the idea that the essential nature of a section 1983 action could be determined by asking which of the state law causes of action for personal injury could also be brought under section 1983. Rather, the court acknowledged that the archetypal wrongs for which redress was provided in section 1983 were those directed against blacks in the South during the reconstruction era and that these wrongs shaped the § 1983 remedy. The court also found that "[e]ven in the modern era, ... personal injuries based upon intentional acts make up the most significant subset of claims brought under § 1983." *Id.* at 464.

### Favoring a Generalized Approach

Of the federal appellate courts that have had to choose between two state statutes of limitations for personal injury actions, two have applied the more general statute

of limitations to section 1983 cases. In *Small v. Inhabitants of the City of Belfast*, 796 F.2d 544, 547 (1st Cir.1986), the First Circuit held that Maine's six-year statute of limitations for general personal injuries applied. The First Circuit saw the *Wilson* opinion as characterizing section 1983 claims as personal injury claims and as intending to "encompass the broad range of potential tort analogies section 1983 has been used to invoke." *Id.* at 546. The First Circuit court reasoned that section 1983 claims could not be characterized easily as "trespass" or "trespass on the case" claims, nor could they be characterized simply as "intentional" or "unintentional" torts. Further, the court stated that section 1983 claims "are not primarily or even nearly analogous to assault and battery, false imprisonment or defamation." *Id.* at 546.

The *Small* court identified Maine's potentially applicable statutes of limitations: a two-year statute for assault and battery, false imprisonment, slander, libel and malpractice; and a six-year statute for "[a]ll civil actions ... except as otherwise specially provided." *Id.* at 547 quoting 14 M.S.R.A. §§ 753, 752. The First Circuit found that the six-year limitation "is applicable to all tort actions, including personal injury tort actions, except where the Maine legislature has specifically provided otherwise." *Id.* at 547. Because the court found that the six-year statute was generally applicable to intentional and unintentional torts, unless an exception was statutorily carved out for a specific cause of action, the court borrowed the six-year statute of limitations for section 1983 actions. The court distinguished the *Jones* case:

> Unlike the Alabama statute in *Jones*, the Maine statutes do not clearly separate all intentional from all unintentional torts. Instead, section 753 only singles out a few specific intentional torts for different treatment from a much larger universe of all torts, including those involving personal injury, treated under section 752. To the extent the *Jones* case goes beyond this reasoning and suggests that the statute of limitations applying to select torts such as assault and battery,

false imprisonment, and slander and libel should be adopted for section 1983 purposes, we reject such analysis as against the weight of authority and inconsistent with *Wilson v. Garcia*.

*Id.* at 548–49. The *Small* court buttressed its opinion by relying in part on other federal court decisions that borrowed a general personal injury statute of limitations for section 1983 but which also predated the *Wilson* opinion. *See, e.g. Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir.1984) and *Rodrigues v. Village of Larchmont*, 608 F.Supp. 467, 476–77 (S.D. N.Y.1985). The first circuit's decision in *Small* was followed shortly by the Second Circuit's decision of *Okure v. Owens*, 816 F.2d 45 (2nd Cir.1987).

Relying on the *Wilson* Court's language, the Second Circuit in *Okure* said that the characterization of section 1983 claims as intentional or unintentional should not control the statute of limitations issue. The Second Circuit read *Wilson* as commanding it to borrow an expansive personal injury statute of limitations from New York in order "to accommodate the diverse personal injury torts that section 1983 has come to embrace so as not to exclude claims that stray from a precisely drawn analogy." *Id.* at 48. The Second Circuit emphasized that the *Wilson* court's use of the term " 'general' to describe personal injury torts analogous to section 1983 claims was neither casual nor superfluous." *Id.* The court stated that *Wilson* directed them "to look beyond the nature of the section 1983 claim to the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal claim." *Id.*

The *Okure* court recognized a structural dichotomy in the New York statutory scheme that separates a class of intentional torts from the general personal injury torts and found that this dichotomy would continue to exist no matter how many intentional torts were specifically identified in the intentional tort statute of limitations provision. Based on this reasoning, the Second Circuit refused to apply to New York's one-year statute of limitations governing assault, battery, false imprison-

ment, malicious prosecution, libel, slander, false words causing special damages and a violation of the right of privacy. *Id.* at 48, quoting N.Y.C.P.L.R. § 215(3). Instead, the Second Circuit applied New York's three-year statute of limitations for "an action to recover damages for a personal injury except [those actions covered by section 215(3)]." *Id.* citing N.Y.C.P.L.R. § 214(5).

The Second Circuit additionally found that use of the three-year statute of limitations aided the federal interest in not discriminating against the section 1983 remedy. The court recognized that situations might arise wherein the injured person could be immediately aware of his or her personal injury but not of the constitutional dimensions of the tort. The court reasoned that because recognition problems are "endemic in section 1983 litigation, we believe that there must be time for plaintiffs to reflect and to probe." *Id.* at 49.

Although the policy arguments asserted by the *Okure* majority are persuasive, the dissenting judge in *Okure* made a strong argument in favor of adopting New York's statute of limitations for intentional torts. The dissent's foremost argument was that the Supreme Court's recent decisions involving section 1983 claims indicate that negligence is insufficient to establish a section 1983 claim in several constitutional areas. *Id.* at 51 citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (finding negligence insufficient for due process claim); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (holding that negligence is insufficient for an eighth amendment cruel and unusual punishment claim); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (holding that negligence is insufficient to state an equal protection claim.)

The dissent also noted that the Supreme Court has warned district courts not to focus undue scrutiny on words found in its opinions and he argued that it seemed hyperbolic to make the *Wilson* court's use of "general" in reference to personal injury actions so important as to control the statute of limitations decisions. *Id.* He dis-

missed the *Okure* majority's finding that plaintiffs need more than one year to probe and reflect before filing a section 1983 action. Drawing on his personal experience, the dissenting judge stated that most section 1983 actions are filed within weeks or months after the alleged violation is discovered. *Id.* at 53.

### Analysis

As is true in many instances wherein the federal courts find themselves divided, the division regarding which state statute of limitations to borrow for section 1983 actions has been caused by conflicting interpretations of a Supreme Court decision, in this instance *Wilson v. Garcia, supra.* Courts on one side of the split have fastened their reasoning to the *Wilson* Court's identification of the wrong that prompted the enactment of section 1983 and the characterization of that wrong as analogous to an intentional tort, such as those covered under some modern statutes of limitations. On the opposite side of the split, courts ground their reasoning on the *Wilson* Court's emphasis of the federal interest in providing a limitations period that does not discriminate against the section 1983 remedy of civil rights plaintiffs and on the Court's language regarding the preference of borrowing statutes of limitations for general personal injuries for section 1983 use. Courts from both sides of the controversy agree that the federal interests in "uniformity, certainty and the minimization of unnecessary litigation" all support the conclusion that Congress intended the federal courts to borrow only one state statute of limitations for application to all section 1983 claims. *See Wilson*, 471 U.S. at 275, 105 S.Ct. at 1947.

I am convinced that only by our remaining with the previous decision to borrow Nebraska's four-year general personal injury statute of limitations will the policies supporting the section 1983 remedy and the purposes of borrowing be furthered.

The concept of borrowing was explained in *Wilson*. The Court stated that "[b]y adopting the statute governing an analogous cause of action under state law, feder-

al law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." The Court warned that if the federal claim and the state law cause of action differed significantly, then the state statute of limitations need only be used as a rough approximation in setting the limitation period by the federal courts. In the end, the Court stated that uniformity need not be nationwide, but rather that uniformity within each state is sufficient and entirely consistent with the borrowing principles contained in § 1983.

The *Wilson* Court stressed the federal interest "in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy." *Id.* at 276, 105 S.Ct. at 1947. Although I cannot disagree with the fact that the activities of the Ku Klux Klan prompted the Congress to enact section 1983, I do not believe that this fact alone should govern the choice of a state limitations period in this modern era.

Individual and personal rights protected by section 1983 are mentioned several times throughout the *Wilson* opinion. Characterizing the protections of the fourteenth amendment due process clause as a command, the Court stated that "[a] violation of that command is an injury to the individual rights of the person." *Id.* at 277, 105 S.Ct. at 1948. Additionally, the *Wilson* Court ventured to say that "[h]ad the 42nd Congress expressly focused on the issue decided today, we believe it would have characterized section 1983 as conferring a general remedy for injuries to personal rights." *Id.* at 278, 105 S.Ct. at 1948. The Nebraska four-year, personal injury statute of limitations covers "injury to the rights of the plaintiff." See Neb.Rev.Stat. § 25–207 (Reissue 1985).

While I agree with the *Okure* dissent that the term "general" should not be scrutinized as if it were statutorily used, I think that when the term is read in the context of the entire opinion, the *Wilson* Court's meaning was to direct the district courts to borrow a broad statute of limitations. The Court stated:

The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interest vindicated by § 1983. General personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today.

*Id.* at 279, 105 S.Ct. at 1949. The court's use of the term "general," without more, is not enough to establish a mandate to federal courts to borrow broad limitations periods. However, as the term is understood in light of the federal interests at stake and the need for uniformity, I am convinced that the district of Nebraska should retain its adoption of the four-year personal injury statute of limitations for section 1983 actions.

Although the *Okure* Court was able to identify a structural dichotomy in New York's statutes of limitations, I find no similar dichotomy in the Nebraska statutes. The Nebraska statutory scheme does not neatly divide tort actions into categories according to their intentional or unintentional characters. Some intentional torts are barred in one year: libel, slander assault and battery, false imprisonment and malicious prosecution. § 25–208. Fraud, on the other hand, is subject under various situations to a four-year (§ 25–207), a two-year (§ 30–2206), or a five-year statute (§ 30–2206). Trespass on real property; taking, detaining or injuring personal property; and injury to the rights of the plaintiff other than contract and fraud are limited by a four-year statute. § 25–207. The time limit for action for malpractice, § 25–208, and professional negligence, § 25–222, is two years. Products liability actions, either for negligence or strict liability, have a four-years-after-damage-occurs or a ten-year-after-the-product-was-sold-or-leased limit. § 25–224. Any action not otherwise mentioned is to be brought within four years. § 25–212.

As this recitation of statutes demonstrates, there is no distinction between intentional and unintentional torts that controls the categorization of torts in Nebraska for statutes of limitation purposes. Even if I were persuaded by the analysis

espoused by the eleventh, sixth and fifth circuits, I still would be confronted with choosing between Nebraska's various and several statutes of limitations that govern intentional torts. The conglomeration of limitations periods and the manner in which the Nebraska legislators divided the causes of action for limitations purposes convince me further that I am making the correct choice in borrowing the four-year statute.

Reasonable persons have interpreted *Wilson* in conflicting ways, but I am confident that the continued borrowing of the four-year limitations period of Neb.Rev. Stat. § 25–207 is in line with *Wilson* and that the four-year period will not burden or discriminate against section 1983 claimants. Moreover, retention of the four-year limitations period will not dash the expectations of the section 1983 plaintiffs in Nebraska who recently adapted to the post*Wilson* change from the three-year limitations period of § 25–219 to the four-year period of § 25–207.

Epp filed his lawsuit on October 16, 1987, well within four years of the events in 1985 that he alleges deprived him of his constitutional rights.

### ORDER

According to the analysis set forth in the accompanying memorandum,

IT IS ORDERED that the defendants' motion to dismiss, filing 10, is denied.