**Samuel JONES, Jr., Plaintiff-Appellant,**

v.

**PREUIT & MAULDIN, et al.,
Defendants-Appellees.**

**No. 84-7482.**

United States Court of Appeals,
Eleventh Circuit.

June 21, 1985.

---

C.V. Stelzenmuller, Thomas, Taliaferro, Forman, Burr & Murray, F.A. Flowers, III, Birmingham Ala., J.G. Speake, Moulton, Ala., for plaintiff-appellant.

T. Michael Putnam, Potts, Young, Blasingame, Suttle & Putnam, Florence, Ala., for defendants-appellees.

Before VANCE and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

On February 24, 1984, Samuel Jones filed suit against Preuit & Mauldin, a partnership engaged in the business of servicing equipment. The complaint alleged that on April 8, 1982, the defendants, acting pursuant to ALA.CODE § 35–11–111 (1975), obtained writs of attachment for three International Harvester cotton pickers belonging to Jones. The sheriff of Lawrence County seized the machines on April 18, 1982, without notice to Jones or a pre-seizure hearing. The attachment also took place prior to judgment in the defendants' underlying state court actions for a debt for repairs to the pickers. Jones claims that such prejudgment attachment procedures deprived him of due process of law in contravention of *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and its progeny. Jones brought this claim under 42 U.S.C.A. § 1983 (West 1981). The defendants moved for dismissal for failure to state a claim and for failure to bring the suit within the statutory time limit. The district court, 586 F.Supp. 1563, granted the motion and rejected the plaintiff's claim that the most relevant state statute was the three-year statute governing suits on attachment bonds, ALA.CODE § 6–6–148 (1975). Instead, the court applied the one-year "catchall" statute of limitations, covering "actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section." ALA.CODE § 6–2–39(a)(5) (1975). Since the plaintiff had filed suit 22 months after the attachment, the court dismissed the case.

## I. STATEWIDE CHARACTERIZATION OF SECTION 1983 CLAIMS

■ Because Section 1983 does not contain a specific statute of limitations, 42 U.S.C.A. § 1988 (West 1981) directs courts to select and apply the most appropriate or analogous state statute of limitations. *Burnett v. Grattan*, —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Board of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). So long as that analogous state provision is not inconsistent with the policies underlying the federal cause of action, *Johnson*, 421 U.S. at 465, 95 S.Ct. at 1722; *Ehlers v. City of Decatur*, 614 F.2d 54 (5th Cir.1980), a federal court may treat the state statute of limitations as controlling.

■ In this Circuit, the choice of an appropriate state statute has proceeded in two steps. First, the court determines the "essential nature" of the claim. Federal law determines the essential nature of the claim, yet federal law resolves question largely by reference to state law. *Shaw v. McCorkle*, 537 F.2d 1289 (5th Cir.1976). Second, the court decides which statute of

limitations a state court would apply if faced with a claim of the same type or class as the Section 1983 claim. *Beard v. Stephens,* 372 F.2d 685 (5th Cir.1967).

■ The Supreme Court's recent decision in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), relieves this court of the difficult task of characterizing the essential nature of Section 1983 claims in varying contexts.[1] The Court in *Wilson* held first that the characterization of a Section 1983 claim for statute of limitations purposes is a question of federal law. Next, the Court held that a simple and uniform characterization of all Section 1983 claims best fits the statute's remedial purpose because a uniform characterization prevents the "uncertainty and time-consuming litigation" caused when courts predicate their choice of the correct statute of limitations "on an analysis of the particular facts of each claim." 105 S.Ct. at 1945. Hence, federal courts must "select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Id.* at 1947.

■ Finally, the *Wilson* court held that federal courts hearing claims under Section 1983 should borrow the state limitations statute governing "personal injury" claims rather than a "catchall" limitations period, a limitations statute for damage to property or breach of contract, or a limitations statute governing suits against public officials. The task facing this court, therefore, is to choose the one Alabama limitations statute governing claims for recovery of damages for "personal injury" that federal courts should borrow for purposes of 42 U.S.C.A. § 1983 (West 1981).[2]

## II. ESSENTIAL NATURE OF SECTION 1983 PERSONAL INJURY CLAIMS

■ Two Alabama statutes govern the limitations periods for bringing personal injury suits. The six-year statute, ALA. CODE § 6–2–34(1) (1975), governs all ac-

---

1. Despite the single structure for analysis, courts in this Circuit have used subtle but important differences in characterizing the essential nature of various Section 1983 claims. Some courts have denominated the facts as alleged in the complaint and a generalized statement of the legal claim as the essential nature of the claim. *See Nathan Rodgers Construction & Realty Corp. v. City of Saraland, Alabama,* 670 F.2d 16 (5th Cir. Unit B 1982) (essential nature is "suit against a city, its councilmen and mayor for an asserted denial of property rights resulting from delay in the issuance of a sewer permit"); *Prince v. Wallace,* 568 F.2d 1176 (5th Cir.1978); *Beard v. Stephens,* 372 F.2d 685 (5th Cir.1967). Other courts have gone one step further and used this literal description of the federal claim to group it with similar state law claims. *See Whatley v. Department of Education,* 673 F.2d 873 (5th Cir. Unit B 1982) (employment due process claims grouped together with actions for recovery of lost wages); *see also McGhee v. Ogburn,* 707 F.2d 1312 (11th Cir.1983); *Sewell v. Grand Lodge of the International Association of Machinists and Aerospace Workers,* 445 F.2d 545 (5th Cir.1971), *cert. denied,* 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). Under the first approach, most of the work of evaluating the strength of the relationship between the federal claim and various state claims is left for the second step of the process. State law controls the evaluation. If the facts and general description of the federal claim could

not be reframed as a viable state law cause of action with a special statute of limitations, the claim would fall into the state's catchall provision simply because a state court would place it there. By contrast, under the second approach the crucial evaluation is drawn at the first stage of the inquiry, where state law is informative but not controlling. Thus, even if the complaint could not be recast as a state cause of action with a special statute of limitations, the court asks whether there is any state claim of the same general type.

The *Wilson* decision departs from both of these approaches because it characterizes all Section 1983 claims without regard to the particular facts underlying individual claims. Because previous precedents in this Circuit were decided under methods inconsistent with the *Wilson* analysis, we must determine anew the appropriate statute of limitations under Alabama law.

2. The defendants have not suggested to this Court that *Wilson* should only apply prospectively. We also note that the defendants have taken no action in reliance on precedent overruled by *Wilson,* and the policies of intra-state uniformity and certainty that underlie the *Wilson* decision would be hindered by failure to apply the decision retroactively. Each of these facts cuts in favor of retroactive application of *Wilson* against the defendants under *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971).

tions "for any trespass to person or liberty, such as false imprisonment or assault and battery." The one-year statute, ALA. CODE § 6–2–39(a)(5) (1975), applies to actions "for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section." [3] The choice between these two statutes depends upon whether the wrongful act constitutes a trespass or a trespass on the case: Section 6–2–34(1) governs trespass actions while Section 6–2–39(a)(5) governs trespass on the case. *C.O. Osborn Contracting Co. v. Alabama Gas Corp.*, 273 Ala. 6, 135 So.2d 166 (1961); *Smith and Gaston Funeral Directors v. Dean*, 262 Ala. 600, 80 So.2d 227 (1955); *Pennick v. City of Florala*, 529 F.2d 1242 (5th Cir. 1976); *Beard v. Stephens*, 372 F.2d 685 (5th Cir.1967). The choice of the proper and analogous Alabama statute for purposes of Section 1983 claims will depend, then, on whether the "personal injury" that is the essential nature of all Section 1983 claims is more akin to trespass or trespass on the case. This calls for some elaboration on the "essential nature" of Section 1983 claims and is therefore a question of federal law, but one that may be informed by the state law definition of trespass and trespass on the case.

■ Under Alabama law, trespass involves an intentional act done with force and immediately injurious to the person of another or to property in his or her possession. Trespass on the case would lie when the wrongful act causes harm only indirectly and without an intentional act of force.[4] *W.T. Ratliff Co., Inc. v. Henley*, 405 So.2d 141 (Ala.1981). Trespass requires inten-

tional or "wanton" causation of injury as opposed to mere negligence, *City of Fairhope v. Raddcliffe*, 48 Ala.App. 224, 263 So.2d 682 (1972); *Cochran v. Hasty*, 378 So.2d 1131 (Ala.Civ.App.1979), or an omission of a duty to act. *Sasser v. Dixon*, 290 Ala. 17, 273 So.2d 182 (1973). Liability based on *respondeat superior* is framed as trespass on the case. *C.O. Osborn Contracting Co. v. Alabama Gas Corp.*, 273 Ala. 6, 135 So.2d 166 (1961).

■ The characterization of Section 1983 claims given by the Supreme Court in *Wilson* resembles an action in trespass rather than trespass on the case. The Court analyzed the legislative history of the Reconstruction Civil Rights Acts and noted that the specific historical catalyst for those statutes was the "campaign of violence and deception in the South, fomented by the Ku Klux Klan, which was denying decent citizens their civil and political rights." 105 S.Ct. at 1947. *See generally* A. TRELEASE, WHITE TERROR 261–73 (1971) (describing activities of Ku Klux Klan in northern Alabama). The Congress had been especially concerned with murder, whippings, lynchings and banishings; the statutory remedy for violation of constitutional rights was meant to restore peace and justice. 105 S.Ct. 1947; *see also Briscoe v. LaHue*, 460 U.S. 325, 336–40, 103 S.Ct. 1108, 1116–18, 75 L.Ed.2d 96 (1982). These acts of violence are all "direct" and intentional injuries to the person that would sound in trespass. *Cf. Beard v. Stephens*, 372 F.2d 685 (5th Cir.1967); *Holcombe v. Whitaker*, 294 Ala. 430, 318 So.2d 289 (1975); *Donald v. Swann*, 24 Ala.App.

**3.** Since the filing of this appeal, the Alabama legislature has repealed Section 6–2–39 and extended the relevant limitations period to two years. *See* Act of Jan. 9, 1985, No. 85–39 1984 Ala.Acts —— (to be codified at ALA.CODE § 6–2–38(1)). Because we hold that Section 6–2–34(1) is the appropriate state statute of limitations, we do not decide which version of the catchall statute (the statute dealing with personal injury claims sounding in trespass on the case) would be applied as a matter of federal law in this case.

**4.** Alabama has modified the common law distinction between trespass and case, but the di-

rect/indirect distinction remains a dominant method for separating the two causes of action in cases involving injury to the person. An indirect injury is one that is merely "consequential" and not a direct result of the wrongful act. The presence of some intervening contributory cause shows that an act is the indirect cause of injury. *Sasser v. Dixon*, 290 Ala. 17, 273 So.2d 182 (1973); *see Borland v. Sanders Lead Co., Inc.*, 369 So.2d 523 (Ala.1979) (establishing elements of proof for indirect trespass to property).

463, 137 So. 178, *cert. denied,* 223 Ala. 293, 137 So. 181 (1931).

On the other hand, the remedy ultimately chosen by the 42d Congress in Section 1983 did not address only those wrongs that most concerned the legislators. Klan activities epitomized a general inadequacy and inequality in state law enforcement. *Monroe v. Pape,* 365 U.S. 167, 172–83, 81 S.Ct. 473, 476–82, 5 L.Ed.2d 492 (1961). The "unifying theme" of the statutes, equality of all persons under the law, constituted a goal much broader than the prevention of physical violence. *Wilson,* 105 S.Ct. at 1947. Nothing in the language or legislative history limits Section 1983 solely to intentional deprivations of constitutional rights. *Parratt v. Taylor,* 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Baker v. McCollan,* 443 U.S. 137, 139–40, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979).

■ Obviously, then, some Section 1983 claims will sound in trespass and others in trespass on the case. Some will involve direct injuries, *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir. Unit A 1981) (unjustified assault on citizen by police officer, and others will involve indirect injuries, *Glover v. Alabama Department of Corrections,* 734 F.2d 691 (11th Cir.1984) (prison official induces several prisoners to assault another prisoner), or injuries caused without the use of force, *Espanola Way Corp. v. Meyerson,* 690 F.2d 827 (11th Cir.1982) (city commissioners' alleged harassment of business through excessive regulation), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). As the Supreme Court has stated, "[a] catalog of ... constitutional claims that have been alleged under § 1983 would encompass numerous and diverse topics and subtopics." *Wilson,* 105 S.Ct. at 1947. The Section 1983 remedy encompasses a broad range of tort analogies. *Id.* at 1947.

■ The "essential nature" of a Section 1983 personal injury claim cannot, therefore, be determined simply by asking which of the state law causes of action for personal injury, such as trespass or trespass on the case, could also be brought under the federal statute. That question yields too many answers. The appropriate characterization of Section 1983 personal injury claims must be determined by searching the legislative history of the statute and isolating the particular type of wrong that was most paradigmatic, the one category of wrongs that the legislators intended first and foremost to address. The Supreme Court in *Wilson* made such a determination in order to conclude that Section 1983 claims are personal injury claims rather than general statutory claims falling within a catchall limitations statute. The scarcity of statutory claims in 1871 and the primacy of constitutional claims under Section 1983 prevented the use of a state catchall statute. Constitutional claims are only a subset of the claims falling within the Section 1983 remedy, but they were the most significant subset in the eyes of the 42d Congress. *Wilson,* 105 S.Ct. at 1947.

Similarly, personal injuries sounding in trespass make up the most significant subset of claims within Section 1983. The paradigmatic personal injuries covered by the statute, those that motivated the Congress to take action, were acts of intentional and direct violence on the part of the Ku Klux Klan. The 1871 Act was enacted after President Grant described for Congress the breakdown of law and order in the Southern States. Conditions "rendering life and property insecure and the carrying of the mails and the collection of the revenue dangerous" led the President to ask for legislation. The President's request stated that proof of the conditions in the South had been presented to the Senate. S.REP. NO. 1, 42d Cong., 1st Sess. (1871). That Senate Report, relied upon extensively by the Congress, *see* CONG. GLOBE, 42d Cong., 1st Sess.App. 166–67 (1871) (remarks of Rep. Williams), detailed murders, whippings and other acts of violence on the part of the Klan. Senator Sherman's original resolution calling for the passage of a bill was motivated by the activities of armed men who had "by force, terror and violence subverted all civil au-

thority, ... overthrowing the safety of persons and property and all those rights which are the primary basis and object of all civil government." The bill would "punish such organized violence." *Id.* at 152.

The debates focused on arson, robbery, whippings, shootings, murders, and other forms of violence and intimidation perpetrated by the Klan. *Briscoe v. LaHue*, 460 U.S. 325, 337, 103 S.Ct. 1108, 1117, 75 L.Ed.2d 96 (1982). These primary wrongs were only compounded by the lack of effective state law remedies. When the legislators complained that the state authorities had been unable or unwilling to protect the constitutional rights of individuals, *see Patsy v. Board of Regents of Florida*, 457 U.S. 496, 505, 102 S.Ct. 2557, 2562, 73 L.Ed.2d 172 (1982), they usually meant that a black citizen had no recourse against illegal acts of violence or trespass. *See, e.g.,* CONG. GLOBE, 42d Cong., 1st Sess. 374 (1871) (remarks of Rep. Lowe) ("While murder is stalking abroad in disguise, while whippings and lynchings and banishings have been visited upon unoffending American citizens, the local administrations have been found inadequate or unwilling to apply the proper corrective."); *id.* at 156 (remarks of Sen. Sherman) (Klansmen do not "think it any crime to kill a negro or rob a Yankee"); *id.* at 199–200 (remarks of Sen. Nye); *id.* at 320–21 (remarks of Rep. Stoughton); *id.* at 441–444 (remarks of Rep. Butler).

The extensive legislative history demonstrates that members of the 42d Congress considered direct acts of violence against black citizens to be the paradigmatic wrong addressed by the new statute. Hence, the essential nature of a Section 1983 claim fits the description of trespass under Alabama law. We conclude on the basis of Congressional intent and the Supreme Court's opinion in *Wilson v. Garcia, supra,* that a Section 1983 claim should be characterized as a personal injury action along the lines of a trespass. Therefore,

federal courts in Alabama will borrow the length of the limitations period as found in ALA.CODE § 6–2–34(1) (1975), together with the proper state law treatment of related questions of tolling and application. That statute contains a six-year limitation period. Jones filed his suit before this limitation period had elapsed and the district court improperly dismissed the case.[5]

REVERSED.

---

**5.** The defendants do not raise any alternative basis for affirming the district court's dismissal

of the case.