Joseph P. KESSEL, Plaintiff,

v.

Matt SCHAFF and City of Belfield, a municipal corporation, Defendants.

Civ. No. A1–86–077.

United States District Court, D. North Dakota, Southwestern Division.

Aug. 12, 1987.

Gene Buresh, Dickinson, N.D., for plaintiff.

Paul G. Kloster, Dickinson, N.D., for defendants.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

Joseph Kessel brings this action against Defendants, Matt Schaff and the City of Belfield, under 42 U.S.C. § 1983 for violation of his rights secured under the fourth, fifth, and fourteenth amendments. Defendants have moved this court for summary judgment pursuant to Rule 56, Fed.R. Civ.P. Summary judgment is appropriate only where there are no genuine issues of material fact and it appears that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir.1986).

### FACTS

The following facts are not disputed by the parties:

On May 15, 1983, Matt Schaff, Chief of Police of the City of Belfield, observed Joseph Kessel driving his vehicle within the city limits of Belfield in an unlawful manner. Matt Schaff attempted to stop Mr. Kessel. The Plaintiff refused to stop his vehicle and the Chief of Police disengaged the chase when the Plaintiff left the city limits. Later that same evening the Plaintiff returned to the city of Belfield and was stopped and cited for exhibition driving, which the Plaintiff did not contest.

Thereafter, and later that same evening, Schaff again observed the Plaintiff operating his motor vehicle in a manner constituting exhibition driving. Once again Schaff attempted to stop the vehicle but the Plaintiff again refused and proceeded north on Highway 85 out of the city limits. The Plaintiff then proceeded across the I–94 exit 10 overpass reaching an estimated

speed of 70 miles per hour with Officer Schaff in pursuit and proceeded to pass a semi truck on the bridge. The Plaintiff's pickup slid sideways and into the ditch when he then attempted to turn left off Highway 85.

After entering the ditch the Plaintiff engaged a 4–wheel drive mechanism and proceeded to drive out of the ditch. At this time Officer Schaff discharged his service revolver three times at the Plaintiff's tire in an effort to disable the vehicle. The bullets pierced the left rear fender of Kessel's pickup, and the upper right hand portion of the tail gate with a bullet striking several inches below the rear window of the cab on the passenger side. Kessel then managed to continue his flight whereupon Schaff disengaged his pursuit. The facts concerning Officer Schaff's location prior to his discharging his revolver are in dispute but are not material to the determination of the summary judgment motion.

LAW

The Plaintiff claims he is entitled to relief under 42 U.S.C. § 1983 as a result of Officer Schaff's activities. The Defendants assert, however, that the Plaintiff's claim is barred by the running of the statute of limitations.

Section 1983 does not contain a specific statute of limitations. Recently however, the United States Supreme Court addressed the statute of limitations issue as applied to all 1983 actions. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In *Wilson,* the Court concluded that the most appropriate statute of limitations for all section 1983 actions is the personal injury statute of limitations of the state whose law is to be applied. *Id.* 105 S.Ct. at 1947. As required by *Wilson* this court is thus required to apply North Dakota's statute of limitations for personal injuries.

■ The Plaintiff contends that either of two limitation statutes may be applied to his claim. First, the Plaintiff argues that this court may apply the statute contained in section 28–01–17(1) of the North Dakota Century Code wherein it provides:

The following actions must be commenced within three years after the claim for relief has accrued:

1. An action against a sheriff, coroner, or constable upon a liability incurred by the omission of an official duty, including the nonpayment of money collected upon an execution.

. . . .

. . . .

N.D.C.C. § 28–01–17 (1985).

The Court's holding in *Wilson,* however, does not permit this court to apply the statute in section 28–01–17 to Kessel's 1983 action. The court in *Wilson* rejected the application of such statutes to 1983 actions in favor of the personal injury statute of limitations period. In *Wilson* the Court stated, "we are satisfied that Congress would not have characterized section 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials.... Congress therefore intended that the remedy provided in section 1983 be independently enforceable whether or not it duplicates a parallel state remedy." *Wilson,* 105 S.Ct. at 1949. Consequently, the Court held that federal courts hearing 1983 claims should borrow the statute of limitation governing personal injury claims rather than a catchall limitation period, a limitations statute for damage to property or breach of contract, or a limitations statute governing suits against public officials. *See Id.*

■ Therefore, the statute of limitation founded at section 28–01–17 of the North Dakota Century Code is applicable only to actions premised upon state law and not those arising under section 1983. The only applicable statute for Kessel's action is the personal injury statute of limitation in North Dakota. This court, however, must choose between two North Dakota limitation statutes which govern different types of personal injuries. On the one hand is the statute which governs the common law intentional torts for personal injuries and a statute governing negligence and strict liability actions on the other hand. One of the statutes provides for a two year statutory period and applies exclusively to inten-

tional type torts. *See* N.D.Cent.Code § 28–01–18 (1985). The other statute of limitations for personal injuries in North Dakota is a catchall provision which provides for a six year statutory period for those personal injuries not expressly provided for in § 28–01–18. *See* N.D.Cent. Code § 28–01–16(5) (1985).

While this is a case of first impression in the state of North Dakota, other jurisdictions have addressed this exact issue. *See Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985) *cert. denied* 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986); *Cook v. City of Minneapolis,* 617 F.Supp. 461 (D.C.Minn.1985); *Chris N. v. Burnsville, Minn.,* 634 F.Supp. 1402 (D.Minn.1986); *Gates v. Spinks,* 771 F.2d 916 (5th Cir. 1985) *cert. denied* 475 U.S. 1065, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986); *U.S. v. Fountain,* 777 F.2d 345 (7th Cir.1985) *cert. denied* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed. 2d 191 (1986). The United States Court of Appeals for the Eleventh Circuit faced a similar decision in *Jones v. Preuit & Mauldin. Jones,* 763 F.2d at 1253–54. The Eleventh Circuit was required to choose the Alabama limitation period applicable to 1983 actions. *Id.* As in the instant case, two Alabama statutes governed the statutory period for personal injury claims in Alabama. *Id.* One statute provided for a six year limitation period for intentional torts, while the other provided for a one year period for negligence actions. *Id.* The Eleventh Circuit concluded, based on the legislative history of the Civil Rights Acts and the Court's language in *Wilson,* that the statutory period applicable to intentional torts governed the period to be applied to all 1983 actions in Alabama. *Id.* Other courts that have addressed this issue have reached the same conclusion. *See Cook v. City of Minneapolis,* 617 F.Supp. 461, 464–65 (D.C.Minn.1985); *Chris N. v. Burnsville, Minn.,* 634 F.Supp. 1402, 1405 (D.Minn.1986) (applied Minnesota's intentional tort statute over the negligence statute to all 1983 actions arising in Minnesota); *Gates v. Spinks,* 771 F.2d 916 (5th Cir.1985) *cert. denied* 475 U.S. 1065, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986) (applied Mississippi's intentional tort limitation peri-

od to 1983 actions); and *U.S. v. Fountain,* 777 F.2d 345 (7th Cir.1985) *cert. denied* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986) (concluded that the Ohio intentional tort limitations statute more closely encompassed the intent of Congress in enacting section 1983).

There appears to be a minority of Courts that have opted for the general limitations statute rather than the one that applies solely to the common law of torts. *See Small v. Inhabitants of City of Belfast,* 796 F.2d 544 (1st Cir.1986); *Hamilton v. City of Overland Park, Kan.,* 730 F.2d 613 (10th Cir.1984) *cert. denied* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985) (decided before the *Wilson* decision). The First Circuit concluded that the general catchall statute for personal injuries encompassed more personal injury claims than did the intentional tort statute and should thus control. *Small,* 796 F.2d at 547.

The Supreme Court in *Wilson,* however, directed the courts to select the personal injury statute of limitation which is most appropriate in each state for all 1983 claims because the personal injury statute was more analogous to Congress' intent in enacting the Civil Rights Acts. *See Wilson,* 105 S.Ct. at 1947. The *Wilson* Court concluded that the historical catalyst for the Civil Rights Act was the campaign of violence and deception in the South by the Ku Klux Klan. *Id.* The Court thus noted that Congress' dominate purpose in enacting the Acts was to restore peace and justice as a result of the Ku Klux Klan's intentional conduct. *Id.* These acts of violence by the KKK were all direct and intentional injuries to the person. *See Id.* Hence it follows that section 1983 was designed to address injuries for intentional misconduct. *Gates,* 771 F.2d at 920; *Fountain,* 777 F.2d at 349; *Jones,* 763 F.2d at 1256. Accordingly, the intentional tort statute of limitations is more analogous to the actions that Congress sought to eliminate with the passage of the Acts than is the general catchall personal injury statute of limitation.

Obviously some 1983 actions are not analogous to intentional tortious conduct,

but personal injuries sounding in intentional conduct make up the most significant portion of 1983 claims. *Jones*, 763 F.2d at 1255; *Gates*, 771 F.2d at 920. Therefore, it is the conclusion of this court that while both North Dakota limitations statutes theoretically encompass intentional tort actions, the intentional statute of limitation, which applies to actions involving assault, batteries and the like, is the best alternative and more specifically encompasses the sorts of actions which concerned Congress in enacting section 1983. Consequently the two year statute of limitation founded at North Dakota Century Code section 28–01–18 applies to Kessel's 1983 action.

■ The incident giving rise to the present claim arose on May 15, 1983. Kessel did not commence his action until April 21, 1986. Thus more than two years had run before the filing of the present action. As a result Kessel's claim will be barred if the *Wilson* decision and it's effect on his claim is applied retroactively.

As a general rule judicial decisions apply retroactively. *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 877, 35 L.Ed.2d 29 (1973). The Court has recognized however, exceptions to the general rule. The Court set forth a three part test for determining the retrospective application of changes in the law of statute of limitations in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). The first issue under *Chevron* is did the new principle under consideration overrule "clear past precedent on which litigants may have relied" or "decide an issue of first impression whose resolution was not clearly foreshadowed." *Id.* at 106, 92 S.Ct. at 355. The Eighth Circuit had addressed the issue of retroactive application of the *Wilson* decision in *Wycoff v. Menke*, 773 F.2d 983 (8th Cir.1985) *cert. denied* 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986). In *Wycoff* the Eighth Circuit concluded that since the issue of the applicable statute of limitations for 1983 actions had been addressed by virtually every circuit it could not realistically be considered one of first impression. *Id.* at 986. The only issue left to consider under the first prong

of *Chevron* then, is whether *Wilson* established a new principle of law by overruling clear past precedent on which Kessel may have relied. *Id. citing Chevron*, 404 U.S. at 106, 92 S.Ct. at 355.

In 1982 the Eight Circuit court ruled that state limitations periods for tort actions did not apply to section 1983 claims within this circuit. *Garmon v. Foust*, 668 F.2d 400, 406 (8th Cir.1982) *cert. denied* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1983); *see also Occhino v. United States*, 686 F.2d 1302 (8th Cir.1982). Moreover, in *Glasscoe v. Howell*, a prior decision of the Eighth Circuit, the court refused to hold the one year Arkansas statute of limitation governing actions for false imprisonment and assault and battery to a section 1983 claim based on the excessive use of force by Arkansas police officers. *Glasscoe*, 431 F.2d 863 (8th Cir.1970). *Garmon* and *Glasscoe* were in fact clear past precedent on which Kessel may have relied upon when he filed his claim.

In analyzing Kessel's reliance on *Garmon* and *Glasscoe* the court cannot ignore however, the date upon which he filed his suit. Kessel's claim accrued on May 15, 1983, but suit was not filed until April 21, 1986. Moreover, Plaintiff's claim was not filed until approximately one year after *Wilson*, which effectively overruled the Eighth Circuit's holding in *Garmon* and *Glasscoe*. *See Wycoff*, 773 F.2d at 984; and *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (decided April 17, 1985). Likewise, Kessel's claim was not filed until approximately 7 months after the Eighth Circuit's decision in *Wycoff v. Menke*, wherein the court concluded that *Wilson* would apply retroactively if the Plaintiff failed to show that he reasonably relied on *Garmon*. *See Wycoff v. Menke*, 773 F.2d 983, 986–87 (8th Cir.1985).

Accordingly, Kessel was on notice, after the *Wilson* decision, that in North Dakota the two year statutory period for personal injuries might apply to his claim. He also had notice after *Wycoff* that in the Eighth Circuit *Wilson* may be applied retroactively to his claim unless he reasonably relied on *Garmon*. A plaintiff, however, may not

simply disregard the overruling of *Garmon* by the Supreme Court in *Wilson. Richard H. v. Clay County, Minnesota,* 639 F.Supp. 578, 580 (D.Minn.1986). The Supreme Court in *Wilson v. Iseminger* addressed the issue of applying a new statute of limitations to pre-existing claims and stated:

> It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action....

*Wilson v. Iseminger,* 185 U.S. 55, 22 S.Ct. 573, 757, 46 L.Ed. 804 (1902); *See also Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 791 n. 21, 70 L.Ed.2d 738 (1982) (in such cases the question becomes one of reasonableness).

Accordingly, plaintiffs who may have relied upon the *Garmon* decision should be permitted a reasonable period of time after *Wilson* in which to file suit. *Richard H. v. Clay County, Minnesota,* 639 F.Supp. 578, 580 (D.Minn.1986). A year delay by Kessel in filing suit after he was on notice that a two year statutory period may apply to his suit and that it may apply retroactively is not a reasonable delay and negates any reliance that Kessel may have initially placed on *Garmon. See id.* at 581 (nine month delay after *Wilson* not reasonable); *compare with Wegrzyn v. Illinois Department of Children & Family Services,* 627 F.Supp 636 (C.D.Ill.1986) (four month delay reasonable); *Shorters v. City of Chicago,* 617 F.Supp. 661 (N.D.Ill.1985) (75 days reasonable).

The second prong of *Chevron* is whether the retroactive application of *Wilson* will advance or retard its underlying policies. *Chevron,* 404 U.S. at 107, 92 S.Ct. at 355. With respect to this second factor the Eighth Circuit in *Wycoff* concluded:

retroactive application will achieve uniformity and certainty between future and pending cases by subjecting both to the same statute of limitations and thus to the same limitations period. ... We conclude that on balance this factor cuts in favor of *Wilson's* retroactive application.

*Wycoff v. Menke,* 773 F.2d 983, 987 (8th Cir.1985).

The final factor of the *Chevron* test is whether the retroactive application of a decision will result in harsh, unjust or inequitable results. *Chevron,* 404 U.S. at 107, 92 S.Ct. at 355. Kessel's claim had fully matured by May 15, 1983. Thus applying *Wilson* retroactively to Kessel's claim will operate as a bar under the two year prescriptive period applicable to 1983 claims in North Dakota. But because Kessel delayed the filing of his suit until one year after *Wilson,* which put him on notice that a two year period may be applicable to his claim and seven months after *Wycoff* which placed him on notice that *Wilson* may be applied retroactively, this court finds that it is neither harsh, unjust, nor inequitable to apply *Wilson* retroactively to his claim. Consequently, since Kessel's 1983 claim is governed by the two year statute of limitation period under North Dakota Century Code section 28–01–18, Kessel's claim is barred by the running of the limitations period.

Based on the foregoing IT IS HEREBY ORDERED that summary judgment be granted to the Defendants and the complaint against them dismissed.