872 F.2d 1563
 49 Fair Empl.Prac.Cas. 1397,
50 Empl. Prac. Dec. P 39,057
Edwin FOSTER, et al., Plaintiffs,
George L. Langham, Gabe W. Wright and Charles Buskey, Jr.,
Plaintiffs-Appellants,
v.
BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, ALABAMA,
Defendant-Appellee.
 No. 88-7044.
 United States Court of Appeals,
Eleventh Circuit.
 May 23, 1989.
 
 Joseph G. Pierce, Russell Jackson Drake, Drake, Knowles & Pierce, Tuscaloosa, Ala., Thomas H. Figures, Mobile, Ala., for plaintiffs-appellants.
 Frank G. Taylor, Thomas R. McAlpine, Sintz, Campbell, Duke, Taylor & Cunningham, Mobile, Ala., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before JOHNSON, HATCHETT and COX, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 This appeal arises from the denial of relief to seventy-four members of a class of black school teachers in Mobile County, Alabama, who allege they were denied promotions to principal positions in the Mobile County school district on the basis of race in violation of 42 U.S.C.A. Secs. 1982, 1983, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. Sec. 2000e et seq. We affirm.
 
 I. FACTS
 
 2
 This case originally arose in 1963. Black employees of the Mobile County public school system filed a class action challenging the hiring and promotion practices of the Mobile County School Board. In 1974, two black professionals in the school system, Foster and Buskey, intervened, arguing that the Mobile County School Board discriminated against them in promotion-to-principalship decisions.[1] This Court's predecessor found that the School Board had engaged in a pattern of racially discriminatory promotion and assignment practices against prospective principals and principals within the school system. See Davis v. Board of School Commissioners of Mobile County, 600 F.2d 470, 473-74 (5th Cir.1979), modified at 616 F.2d 893 (5th Cir.1980). The Court remanded the case to the district court to determine which members of the class had suffered injury from this discrimination and were entitled to relief.
 
 
 3
 On remand, the district court severed the principalship promotion claims from the remainder of the claims in Davis. On September 3, 1981, the district court certified as a subclass under Fed.R.Civ.P. 23(b)(2) black professionals in the Mobile County school district who alleged they had been denied principal positions within the school district on the basis of race between January 1972 and August 1981.[2] Because plaintiffs had already proven that the school board had engaged in a pattern or practice of discrimination, the district court entered an order establishing the framework for Stage II proceedings to determine which plaintiffs were entitled to relief. See generally Teamsters v. United States, 431 U.S. 324, 361-62, 97 S.Ct. 1843, 1867-68, 52 L.Ed.2d 396 (1977). Under that framework, class members had to present claims with the district court indicating the period for which the member alleged injury and requested relief from the school board's discriminatory promotion practices. Upon presenting a claim, the member presumptively was entitled to relief subject to four defenses available to the defendants. Those defenses were: (1) defendants proved by clear and convincing evidence that a plaintiff would not have been promoted absent discrimination; (2) a plaintiff was offered and refused a promotion within a reasonable time period before or after the vacancy; (3) a plaintiff did not suffer economic harm from defendants' conduct; and (4) a plaintiff was barred from further relief by some other legally cognizable affirmative defense.
 
 
 4
 The district court referred the case to a United States Magistrate, Patrick H. Sims, as Special Master to conduct the Stage II proceedings and to issue a Report and Recommendation identifying those plaintiffs entitled to relief. His goal was to determine the promotion process followed by the school board, to delete racial considerations from that promotion process, and to ascertain the promotions that would have occurred absent discrimination. See generally Franks v. Bowman Transportation Co., 424 U.S. 747, 772-73, 96 S.Ct. 1251, 1267-68, 47 L.Ed.2d 444 (1976). Discovery occurred over a three-year period. In 1984, the magistrate held hearings on the claims of each of the 104 members of the class. On June 5, 1985, the magistrate issued his Report and Recommendation. The report divided the class into two groups, those who were eligible to receive relief and those who were not. The magistrate recommended relief for twenty-eight class members. The district court adopted the magistrate's recommendations as to all except one plaintiff, granting relief to Booker T. Davis although the magistrate had recommended no relief.
 
 
 5
 On July 27, 1985, pursuant to a motion made by attorneys for the class members who were not entitled to relief, the district court severed the class under Fed.R.Civ.P. 23(c)(4)(B) into two subclasses based on the groups established by the magistrate. On December 15, 1987, the recovering class members entered into a consent agreement regarding the damages claimed by each member. On December 17, 1987, the district court entered a final order and judgment granting relief to the members of the recovering class pursuant to the consent agreement and denying relief to the seventy-four[3] members of the non-recovering class. It is from this final order that the non-recovering class members appeal.
 
 II. DISCUSSION
 
 6
 Appellants argue that a six-year statute of limitations rather than the one-year limitations period applied by the district court should control their section 1983 claims. The class certified on September 3, 1981, was defined as all black professionals employed by the Mobile County school district since August 27, 1971, who sought or would seek employment as principals within the school system. Plaintiffs brought suit under section 1981, section 1983, and Title VII. The August 27, 1971, date for defining the class was selected as the first date on which violations could have occurred that were not barred by the statute of limitations. Buskey, one of the original named plaintiffs, filed a charge with the EEOC on August 27, 1973, as required by Title VII. The statute of limitations for Title VII actions was two years. See 42 U.S.C.A. Sec. 2000e-5(g). Prior to 1985, Alabama's one-year statute of limitations applied to section 1983 claims alleging discriminatory employment practices. See, e.g., Smith v. McClammy, 740 F.2d 925, 927 (11th Cir.1984) (per curiam) (citing Doyle v. University of Alabama, 680 F.2d 1323 (11th Cir.1982)). Thus, the applicable statutes of limitations prevented plaintiffs from asserting claims based on events occurring prior to August 27, 1971.
 
 
 7
 In 1985, the Supreme Court decided Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Wilson, the Court held that the state limitations period for personal injury actions would apply to all actions arising under section 1983 within a particular state. Id. at 276, 105 S.Ct. at 1947. Subsequently, this Court decided that the six-year limitations period provided in Ala.Code Sec. 6-2-34(1) applies to section 1983 actions arising in Alabama. Jones v. Preuit & Mauldin, 763 F.2d 1250 (11th Cir.1985), cert. denied, 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986). Appellants argue that this six-year limitations period should apply retroactively to their claims, and that therefore they should be allowed to try the merits of claims arising before 1971.
 
 
 8
 Judicial decisions presumptively apply retroactively to all pending cases. Gulf Offshore Co. v. Mobil Oil Co., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). To determine whether to deny retroactive effect to a judicial decision, we must follow the three-factor test set out in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). See, e.g., Williams v. City of Atlanta, 794 F.2d 624 (11th Cir.1986) (applying Chevron to grant retroactive effect to uniform limitations period for section 1983 actions in Georgia). First, we must determine whether Jones established a new principle of law, either by overruling clear precedent on which litigants may have relied or by deciding an issue of first impression. Chevron, 404 U.S. at 106, 92 S.Ct. at 355. Second, we must look to the purpose and effect of Jones and determine whether retroactive application in this case would advance or inhibit that purpose and effect. Id. at 106-07, 92 S.Ct. at 355-56. Finally, we must consider the inequity that would be created by retroactive application of the new rule. Id. at 107, 92 S.Ct. at 355.
 
 
 9
 The first Chevron factor works against retroactive application of the decision in Jones. The six-year statute of limitations represented a clear break from the past. Prior to 1985, a one-year limitations period applied in Alabama to section 1983 actions based on employment discrimination. See, e.g., Dumas v. Mount Vernon, 612 F.2d 974 (5th Cir.1980) (one-year limitations period applies under Alabama law to action alleging racial discrimination in hiring decision). Jones established a new rule that a six-year limitations period applies to all section 1983 actions arising in Alabama. Jones thus overruled clear precedent.
 
 
 10
 The second Chevron factor does not weigh in favor of retroactive application of the six-year limitations period. The second factor focuses on the purpose and effect of the new decision. See Chevron, 404 U.S. at 106-07, 92 S.Ct. at 355-56. The Supreme Court intended Wilson to further uniformity and certainty of limitations periods for section 1983 actions and to reduce unnecessary expenses incurred in contesting the proper limitations period. Wilson, 471 U.S. at 275, 105 S.Ct. at 1946. Jones established that limitations period as six years for cases arising in Alabama. Courts had already established a uniform and certain one-year limitations period, however. Retroactive application of the new rule in this case increases the limitations period, but does not necessarily increase uniformity and certainty in this area.
 
 
 11
 The third Chevron factor weighs against retroactive application of Jones. That factor requires courts to evaluate the potential inequity caused by retroactive application of the new rule. It would not be inequitable to deny plaintiffs the advantages of a longer limitations period. The one-year period was clear, and plaintiffs as well as defendants have relied on that period throughout the long course of this litigation. Adherence to a one-year limitations period would not work any unfairness on the plaintiffs because they did not rely on the longer limitations period. See Williams v. City of Atlanta, 794 F.2d at 628 (not unfair to apply uniform two-year limitations period because it was unreasonable for plaintiffs to rely on four-year period); cf. Gibson v. United States, 781 F.2d 1334 (9th Cir.1986) (unfair to deny access to courts through retroactive application of a shorter limitations period), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987); Jackson v. City of Bloomfield, 731 F.2d 652 (10th Cir.1984) (unfair to apply shorter limitations period when plaintiffs had relied on longer preexisting limitations period). On the other hand, expanding the limitations period retroactively would be unfair to defendants, because defendants have relied on the existing limitations period for fifteen years. To change that limitations period at this stage in the litigation to allow plaintiffs to assert twenty-year-old claims would be tremendously disruptive and expensive. Based on our application of Chevron, we hold that on the facts of this case the district court was correct in denying retroactive application of the six-year limitations period established in Jones.[4]
 
 
 12
 Petitioners also challenge the merits of the district court's denial of relief to each of the seventy-four members of the non-recovering class. The district court found that petitioners either were not qualified for promotion or would not have been promoted in a nondiscriminatory system. These findings will not be reversed unless clearly erroneous. See Pullman-Standard v. Swint, 456 U.S. 273, 288-89, 102 S.Ct. 1781, 1789-90, 72 L.Ed.2d 66 (1982); McCarthney v. Griffin-Spalding County Bd. of Educ., 791 F.2d 1549, 1551 n. 2 (11th Cir.1986). A finding is clearly erroneous if after reviewing the entire record the reviewing court "is left with a definite and firm conviction that a mistake has been made." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).
 
 
 13
 In order to recover, a candidate[5] had to be qualified for promotion to principal. See Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The district court adopted the magistrate's finding that the Mobile County School Board had established two objective criteria relevant to this appeal for promotion of candidates to principalship positions during the period at issue in this case.[6] In order to be qualified, after 1973 a candidate had to have a principal's certificate,[7] and for promotion to principal of secondary schools, a candidate had to have had at least two years of experience as principal or assistant principal. Approximately thirty-five members of the class of non-recovering plaintiffs lacked the G-1 endorsement or the educational qualifications represented by the A-01 and the AA-38 certificates. Those plaintiffs thus were eligible only for positions available between 1971 and 1973 or for positions available after they obtained the G-1 endorsement. Many members of the non-recovering class lacked the necessary experience for promotion to secondary schools. Those plaintiffs were not entitled to principalships available in secondary schools until they obtained two years of experience as principal or assistant principal.
 
 
 14
 Plaintiffs challenge the finding that the G-1 endorsement or the principal's certificate was an actual prerequisite for promotion to principalship positions. The magistrate made detailed findings that at least after 1973, this was an enforced requirement for promotion to the position of principal. This finding is subject to a clearly erroneous standard of review. Georgia State Conference of Branches of NAACP v. Georgia, 775 F.2d 1403, 1419 (11th Cir.1985) (findings about whether criterion is prerequisite for position subject to clearly erroneous standard of review). The magistrate supported his conclusion in great detail with an extensive analysis of the promotion practices followed by the Mobile County School Board. For all vacancies after 1973, and for principal positions in some schools prior to 1973, applicants lacking the principal's certificate were considered unqualified. After reviewing the record and the magistrate's report, we conclude that the finding that the principal's certificate was a requirement for promotion to principal positions after 1973 is not clearly erroneous.
 
 
 15
 Plaintiffs argue that in order to assert that the principal's certificate was a criterion for promotion, the absence of which would remove a candidate from consideration, the defendants had the burden of proving that the principal's certificate was a business necessity. Plaintiffs rely on Griffin v. Carlin, 755 F.2d 1516, 1526-28 (11th Cir.1985). In Carlin, this Court adopted the reasoning of Judge Wright in Segar v. Smith, 738 F.2d 1249, 1268-70 (D.C.Cir.1984), cert. denied, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985), that in disparate treatment class actions brought under Title VII, where the plaintiffs rely on statistical evidence proving pervasive disparities based on race to present their prima facie case of intentional discrimination, defendants must prove the business necessity of the practice or requirement causing the disparity before defendants can assert that practice or requirement as a defense to plaintiffs' claims. This case is different from Carlin and Segar, however. Plaintiffs did not use statistical evidence to support their claim that defendants had intentionally discriminated against them. This Court's predecessor had already determined the School Board had engaged in a pattern or practice of discrimination. The reason for validation of the requirement that existed in Carlin and Segar, that defendant could not assert the very reason for a statistical disparity in employment decisions based on race in defense of a claim of employment discrimination without showing that the reason was valid, is not present in this case. In the absence of a showing of disparate impact, then, the establishment, without validation through proof of business necessity, of a legitimate, nondiscriminatory requirement for promotion actually applied and enforced satisfied defendants' Stage II burden. See generally Franks, 424 U.S. at 773 n. 32, 96 S.Ct. at 1268 n. 32.
 
 
 16
 Plaintiffs alternatively argue that the requirement of a principal's certificate had a disparate impact on minority applicants. In disparate impact cases, a plaintiff must first show that a facially neutral requirement has a disproportionate impact on members of a protected group. See generally Powers v. Alabama Dept. of Educ., 854 F.2d 1285, 1291-92 (11th Cir.1988). In this case, the magistrate found "no evidence in the case that the certificate requirement, if actually enforced, has had any disparate impact on black professionals. That is, there is no evidence that the required certificates are possessed disproportionately by whites." Plaintiffs thus failed in the presentation of their evidence on this claim.
 
 
 17
 Plaintiffs also challenge the finding that an applicant had to have two years of experience as a principal or assistant principal to qualify for promotion to principal at secondary schools. The magistrate found "that the Board at relevant times maintained a general policy of appointing to principalship at middle and high schools only persons who previously had experience as assistant principal or principal." That finding is not clearly erroneous. Only one person was promoted without experience, but that promotion occurred in 1982, and the person was exceptionally qualified. Although the experience requirement was not established in a written school board policy, not all requirements for a particular position need to be in writing. See McCarthney v. Griffin-Spalding County Bd. of Educ., 791 F.2d at 1552.
 
 
 18
 Plaintiffs alternatively argue that this requirement had a disparate impact on minorities. Again, plaintiffs had the burden of showing that the requirement had a disproportionate impact on members of a protected group. Powers v. Alabama Dept. of Educ., 854 F.2d at 1291-92. The magistrate found plaintiffs made "no showing that the pool of persons having experience as principal or assistant principal is disproportionately white." Plaintiffs admitted as much in their brief, stating, "A counting of the number of blacks and whites promoted to intern and assistant principal is not available from the evidence before the Court." Plaintiffs failed in the presentation of their evidence on this point by failing to show that the experience requirement had a disparate impact on minority applicants for principal positions available in Mobile County during the relevant period.
 
 
 19
 Even if there had been a prima facie showing of disparate impact of the experience requirement, plaintiffs who lack such experience would not be entitled to relief. An employer is not liable for job requirements having a disparate impact on protected minority groups if the requirements are closely related to the skills necessary for success on the job. See Powers v. Alabama Dept. of Educ., 854 F.2d at 1292. In order for a job requirement to be considered a business necessity, there must be a "manifest relationship" between the requirement and the qualities needed for success in the particular position. Walker v. Jefferson County Home, 726 F.2d 1554, 1558 (11th Cir.1984); see generally Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). The magistrate found that "the administrative functions at the secondary level cannot normally be handled by a person without administrative experience." Plaintiffs did not introduce any evidence to show that the requirement was pretextual or that there existed an adequate alternative criterion with a less disparate impact. Defendants thus satisfied their burden of proving this requirement was a business necessity. See Powers v. Alabama Dept. of Educ., 854 F.2d at 1292 (employer has burden of proving requirement legitimate business necessity); accord Walker, 726 F.2d at 1558; but see Watson v. Fort Worth Bank & Trust, --- U.S. ----, 108 S.Ct. 2777, 2790, 101 L.Ed.2d 827 (1988) (plurality) (plaintiff has burden of proving absence of business necessity).[8] The district court did not err in finding that the principal's certificate and administrative experience were legitimate, nondiscriminatory requirements for promotion to the position of principal for the years at issue in this case. Consequently, we affirm the district court in denying relief to those plaintiffs who lacked either qualification.
 
 
 20
 For those plaintiffs qualified for but denied promotions, the magistrate conducted an individual evidentiary hearing on the merits of each plaintiff's claim, and compared each plaintiff's qualifications with the qualifications of the individual eventually hired for the positions available. Ninety-four principal positions were available during the period at issue in this case. The magistrate considered each plaintiff's qualifications for all positions available after the plaintiff applied in some informal way, determined which positions the plaintiff may have been qualified to assume, and evaluated whether plaintiff would have been hired for each position absent discrimination. The magistrate concluded that these plaintiffs would not have been hired in a nondiscriminatory system.[9] The magistrate's findings on these issues are comprehensive and supported by facts presented in great detail. In his report, the magistrate presented the qualifications of each plaintiff, the vacancies within the school district each plaintiff could have assumed, and the reasons he concluded each non-recovering plaintiff was not entitled to relief. The magistrate considered seven subjective factors in reconstructing the promotion process: administrative screening evaluations, letters of recommendation, prior evaluations of administrative performance, teacher evaluations, compliance with Board policies and regulations, incumbency at Barton (where candidates would have become known by the appointing authorities), and specific evidence regarding character flaws, dishonesty, or misfeasance. The magistrate then reconstructed the promotion process absent discrimination based on the evidence before him.
 
 
 21
 Appellants primarily challenge the magistrate's balancing of these factors and interpretation of the evidence presented. Appellants must overcome a high burden on appeal for this Court to reverse the district court's evaluation of conflicting evidence. See Anderson v. City of Bessemer City, 470 U.S. at 574, 105 S.Ct. at 1511 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). We will not repeat the magistrate's findings here. After a thorough examination of the record and the magistrate's report, we cannot say the magistrate's conclusions that these plaintiffs would not have been promoted absent discrimination are clearly erroneous.[10]
 
 
 22
 In two cases, the district court found that the plaintiffs were qualified for promotion but denied relief because another member of the class was more qualified for the position at the time it was available. Appellants argue that the district court either should have granted full relief to all qualified applicants or should have split the damages awarded between or among the qualified applicants. The district court did adopt the latter approach for two vacancies for which several plaintiffs were qualified where the magistrate could not distinguish the applicants. The magistrate was able to distinguish these two plaintiffs from the other members of the class who were qualified and applied for the vacancies. The magistrate determined these two applicants would not have been promoted in a nondiscriminatory system because the individuals who would have been promoted had clearly superior credentials. The district court did not err in denying these plaintiffs relief. Because the magistrate's factual findings are not clearly erroneous, and because the magistrate committed no errors of law, we affirm the district court's determination that these plaintiffs would not have been promoted to the available principal positions in a nondiscriminatory system.
 
 III. CONCLUSION
 
 23
 The judgment of the district court is AFFIRMED.
 
 
 24
 HATCHETT, Circuit Judge, concurring in part and dissenting in part:
 
 
 25
 I concur in the majority's opinion except that portion which holds that two of the discriminatees are not entitled to any relief. My disagreement is based on binding precedent of this circuit and a clear directive from the Supreme Court.
 
 
 26
 In Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir.1974), we discussed the rationale behind backpay and Title VII relief. We stated:
 
 
 27
 Under Title VII and section 1981 the injured workers must be restored to the economic position in which they would have been but for the discrimination--their 'rightful place.' Because of the compensatory nature of a back pay award and because of the 'rightful place' theory, adopted by the courts, and of the strong congressional policy, embodied in Title VII, for remedying employment discrimination, the scope of a court's discretion to deny back pay is narrow. Once a court has determined that a plaintiff or complaining class has sustained economic loss from a discriminatory employment practice, back pay should normally be awarded unless special circumstances are present. [Emphasis in original.]
 
 
 28
 The district court's reasons for denying back pay must be examined for the evidence of 'special circumstances.' ... Whether black workers were economically injured by unlawful discrimination and require a back pay award [or other relief] to make them whole is the issue. [Citations and footnotes omitted.]
 
 
 29
 Pettway at 252-53.
 
 We further explained:
 
 30
 From the employer's viewpoint back pay may be a punishment. But just as the National Labor Relations Act, Title VII was written to protect the employee. Not only has the company violated a strong public policy against racial discrimination here, but it has substantially injured this class of black workers. 'As between the obviously innocent discriminatee and the employer who may have some equities on his side [good faith], it seems fairer to require the employer with his usually superior resources to bear the loss. This generous approach with an emphasis on compensation of the employee is found in the NLRA cases and in several noteworthy Title VII decisions.' [Citations omitted.] [Emphasis added.]
 
 
 31
 Pettway at 252 n. 120.
 
 
 32
 We enumerated reasons for denying backpay awards: "(1) the unsettled nature of the law concerning a particular practice; (2) the good faith of an employer; (3) a state statute conflicting with Title VII; (4) and impossibility of determining the period for which back pay is to be awarded." Pettway at 253 n. 122 (citations omitted). See Albemarle Paper Co. v. Moody, 422 U.S. 405, 421-22, 95 S.Ct. 2362, 2373-74, 45 L.Ed.2d 280 (1975).
 
 
 33
 Where are the special circumstances required by Pettway? This employer did not act in good faith; it intentionally practiced discrimination for a long time involving hundreds of its employees. The majority is required to follow precedent; it has not done so as to this issue.
 
 
 34
 In Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court explained:[A]s is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial. The employer cannot, therefore, claim that there is no reason to believe that its individual employment decisions were discriminatorily based; it has already been shown to have maintained a policy of discriminatory decision making.
 
 
 35
 ....
 
 
 36
 The [class] need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of proved discrimination.... [T]he burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons. [Emphasis added] [footnote and citation omitted].
 
 
 37
 Teamsters at 361-62, 97 S.Ct. at 1868.
 
 
 38
 What are the "lawful reasons" demonstrated by the employer? The fact that another member of the class is more qualified for the same positions can never be a "lawful reason" upon which to base a denial of Title VII relief. Not a single case from our circuit or the Supreme Court supports this rationale for denying Title VII relief. Under the majority's opinion, a hypothetical employer may assert that one of two discriminatees is better qualified than the other, and deny the other discriminatee any relief at all. It is too late in the day for the majority to undermine the rationale of class actions and render Title VII lawsuits exercises in futility.
 
 
 
 [1]
 This case has a long and complicated history. The various lawsuits are identified in Davis v. Board of School Commissioners of Mobile County, 517 F.2d 1044 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). For a more complete version of the proceedings in this segment of the Mobile County School Board discrimination action, see Foster v. Board of School Commissioners of Mobile County, 810 F.2d 1021 (11th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987)
 
 
 [2]
 The actual class consisted of individuals who had applied for principalships after August 27, 1971. The first positions became available in January 1972. Vacancies filled for the 1982-83 school year were not included because there was no determination of liability by the district court beyond September 3, 1981
 
 
 [3]
 Johnny Davis was denied relief but is not a member of the non-recovering subclass appealing the entry of judgment. Consequently, although there were 104 original plaintiffs and twenty-nine received relief, only seventy-four individuals are involved in this appeal
 
 
 [4]
 An additional reason to deny retroactive application of Jones is that the six-year limitations period no longer applies to section 1983 actions in Alabama. The Supreme Court recently held that in states like Alabama with more than a single statute of limitations for personal injury actions, the residual personal injury limitations period applies. Owens v. Okure, --- U.S. ----, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). That period in Alabama is the two-year period provided in Ala.Code Sec. 6-2-38(l ). See Owens, 109 S.Ct. at 580 n. 9
 
 
 [5]
 The magistrate defined candidates as those professionals within the Mobile County school district who had made their interest in an administrative position known. Once a candidate made his or her interest known, he or she was considered for all vacancies. The failure to apply for a position does not automatically bar relief, International Brotherhood of Teamsters v. United States, 431 U.S. 324, 364, 97 S.Ct. 1843, 1869, 52 L.Ed.2d 396 (1977), although the non-applicant has the burden of showing he or she would have applied absent the existing discriminatory practices. Id. at 368, 97 S.Ct. at 1871. Appellants do not challenge the magistrate's ruling that a plaintiff had to apply at some point in some informal way to be entitled to relief
 
 
 [6]
 The magistrate rejected six objective criteria claimed by the school board because they either were inconsistently applied or had a disparate impact on minority candidates. The magistrate accepted other objective criteria, but they are not relevant to this appeal
 
 
 [7]
 The Alabama Board of Education issued certificates indicating an area of specialization or concentration. The G-1 endorsement reflected a teacher's specialization in administration. The G-1 endorsement was included on the A-01 certificate, indicating a Master's degree plus a specialization in administration, or on the AA-38 certificate, indicating certain post-Master's degree study plus specialization in administration. The G-1 endorsement on either of these certificates was the "principal's certificate."
 
 
 [8]
 A plurality opinion is not binding on this Court, Powers v. Alabama Dept. of Educ., 854 F.2d 1285, 1292 n. 11 (11th Cir.1988), and we are compelled to follow both our prior precedent, see, e.g., Craig v. Alabama State University, 804 F.2d 682, 689 (11th Cir.1986), as well as prior Supreme Court precedent indicating that the employer has the burden of proving a business necessity. See e.g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1977) (employer must prove requirements are job related)
 
 
 [9]
 The district court imposed on defendants the burden of proving by clear and convincing evidence that the plaintiff would not have been promoted in a nondiscriminatory system. Defendants argue that the burden of proof should have been by a preponderance of the evidence rather than by clear and convincing evidence. See Lewis v. Smith, 731 F.2d 1535, 1539 (11th Cir.1984). The magistrate's findings that defendants proved by clear and convincing evidence that these plaintiffs would not have been promoted in a nondiscriminatory system are not clearly erroneous. Consequently, we need not decide whether the district court erred in requiring proof by clear and convincing evidence that plaintiffs would not have been promoted absent discrimination
 
 
 [10]
 Doris Alexander is included in appellants' brief as a member of the non-recovering subclass, but the district court entered judgment in her favor in the amount of $52,643.25. We have also reviewed the claim of Geraldine D. Colley, although her appeal is not presented in appellants' brief