**Leon RICE, Plaintiff,**

v.

**TARGET STORES, a DIVISION OF DAYTON HUDSON CORP. and Michael Schmidt, Defendants.**

Civ. No. 4–86–833.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 25, 1988.

Daniel S. Shulman, Margaret M. Schulman, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Reid Carron, John B. Gordon, Faegre & Benson, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion to dismiss and for an award of attorneys' fees and costs.

FACTS

This is an action for damages brought by plaintiff Leon Rice against defendant Target Stores, Inc. (Target), his former employer, and Michael Schmidt, his former supervisor. Plaintiff alleges that defendants unlawfully terminated his employment on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; and the Minnesota Human Rights Act, Minn.Stat. § 363.01 *et seq.* Plaintiff further asserts a claim for breach of contract arising from Target's alleged failure to follow its personnel procedures, and a claim for wrongful discharge based on the public policy exception to the employment-at-will doctrine.

Plaintiff Leon Rice is a black man who was recruited by Target in January 1978. After working at a number of Target stores in various positions, Rice was promoted to hard-lines merchandise manager at the Target store located in Roseville, Minnesota in December 1982. As a hard-lines manager, plaintiff served as an assistant store manager and was responsible for several individual departments in the store. Beginning in June 1983, defendant Michael Schmidt was store manager at the Roseville Target and in that capacity acted as plaintiff's immediate superior.

At all relevant times, Nancy Lagaard was Target's manager of employee relations. While Lagaard had no authority over store managers or employees under their supervision, she did oversee employee

concerns, including complaints of racial and sexual discrimination and unfair treatment, for all 50,000 Target employees. On July 9, 1984 plaintiff sent a memorandum to Lagaard. He also sent a copy of the memorandum to Schmidt. In the memorandum, plaintiff praised an article on sexual harassment written by Lagaard in a recent employee newsletter and informed Lagaard that he had experienced many discriminatory statements and acts as a black within the company and that management's response to his concerns was that there was no problem. Neither Lagaard nor Schmidt responded to plaintiff's memorandum in any way and plaintiff did not pursue his suggestions or concerns.

On July 24, 1984 plaintiff sent another memorandum to Lagaard with an article attached from the Harvard Business Review dealing with employee concerns. Plaintiff also sent a copy of the memorandum and article to Schmidt. The article addressed different approaches a company can use to encourage employees to air their complaints without being made to feel like troublemakers. Again, neither Lagaard nor Schmidt responded to plaintiff's memorandum except that Schmidt commented to Rice that the article was good. Plaintiff did not follow up on this memorandum.

Although plaintiff generally performed his job in a satisfactory manner from 1979 to 1983, certain deficiencies in his performance began appearing in early 1983 as noted by Rice's previous supervisor and continued through the remainder of 1983 and early 1984 as observed by Schmidt. Specifically, Schmidt found that plaintiff did not tour his departments on a regular basis, did not follow up on delegated work assignments, failed to properly direct department managers, failed to report to work on time, and failed to maintain company housekeeping and physical appearance standards. Schmidt noted these deficiencies in numerous memoranda which he sent to plaintiff and to plaintiff's employment file. Although plaintiff usually acknowledged the above deficiencies when confronted by Schmidt, he failed to act upon Schmidt's suggestions for improvement.

Based on plaintiff's continued performance deficiencies, Schmidt informed plaintiff in mid-July 1984 that if plaintiff failed to improve, plaintiff would be given a "Phase I warning." This warning is part of the two-step warning procedure Target uses when an employee's job performance is below an acceptable level. The first step, called a Phase I Warning Notice, specifically sets forth the deficiencies in the employee's performance, the improvement required and suggested methods of improvement. The Phase I Warning informs the employee that failure to meet the outlined improvement goals within thirty days, or a repetition of the same conduct within six months after successful completion of the thirty-day warning period, will result in the issuance of a Phase II Warning. A Phase II Warning is similar in format to the Phase I Warning. However, if an employee fails to meet the improvement goals set forth in the Phase II Warning his employment is subject to termination as of the date specified therein.

Because plaintiff failed to correct his performance deficiencies, on July 24, 1984 Schmidt, acting with the approval of the district manager, issued a written Phase I Warning to plaintiff. Plaintiff was given until August 24, 1984 to meet the specified improvement goals. When plaintiff failed to meet the Phase I improvement goals by August 24, 1984, Schmidt, with the district manager's approval, issued a Phase II Warning to plaintiff. Under this warning plaintiff was given until September 6, 1984 plus six months to meet the improvement goals or his employment would be terminated. After the issuance of each warning, plaintiff met with Schmidt and indicated his belief that the warnings were not justified. Also, plaintiff alleges that after he received the Phase II Warning, he informed Schmidt that he had made arrangements with the EEOC for an appointment to discuss the warnings and racial discrimination within Target. On August 27, 1984 plaintiff met with an employee of the EEOC to discuss his concerns but he refrained from filing charges pending further developments.

Plaintiff alleges that on September 7, 1984 he met with Schmidt who asked plain-

tiff if plaintiff intended to pursue his contacts with the EEOC. Plaintiff alleges that he responded affirmatively upon which Schmidt asked plaintiff to resign. Plaintiff refused and thereafter received a termination notice which indicated plaintiff's employment was being terminated for poor performance. Defendants maintain that the sole reason for the termination was plaintiff's failure to remedy his poor performance.

Six days after the termination, plaintiff filed a charge with the EEOC claiming discrimination on the basis of race and retaliation in violation of Title VII. On September 17, 1984, the EEOC, on behalf of plaintiff, instituted an action for preliminary relief pursuant to section 706(f)(2) of Title VII, seeking plaintiff's reinstatement pending completion of the EEOC's administrative process in order not to chill further complaints of discrimination by other employees of Target. On September 21, 1984, the United States District Court for the District of Minnesota issued a temporary restraining order reinstating plaintiff as hard-lines manager at the Roseville Target pending a hearing on a preliminary injunction. The court subsequently referred the matter to the United States Magistrate pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate issued a report recommending that the EEOC's motion for a preliminary injunction be denied, that the temporary restraining order be dissolved, and that each party bear its own costs. Upon objections by the EEOC to the magistrate's report and recommendation, the court conducted a de novo review of the record to make an independent determination of whether a preliminary injunction should issue until the EEOC could complete its investigation. As a result of this review, the court denied preliminary relief by order dated January 17, 1985.

The EEOC continued its investigation and on December 11, 1985 issued its finding of reasonable cause. In part, that finding stated:

> The evidence of record establishes that Mr. Rice told Mr. Schmidt of his intention to contact EEOC, and that Mr. Rice transmitted to Mr. Schmidt the July 9 letter indicating his opposition to alleged discriminatory practices. Prior to these communications, Mr. Rice met the respondent's performance standards. The respondent's adverse actions subsequent to Mr. Rice's protected activity are thus related to the July 9 letter and Mr. Rice's intention to file a charge with EEOC, because Mr. Rice did not incur disciplinary action for similar conduct which preceded the discharge, nor did similarly situated managers.

> I therefore conclude that there is reasonable cause to believe that Mr. Rice was retaliated against as alleged.

Complaint Exhibit B. Thereafter on July 31, 1986, the EEOC issued plaintiff his Notice of Right to Sue. On October 29, 1986 plaintiff filed this action against Target and Schmidt.

Plaintiff's complaint states five causes of action under which he seeks recovery. First, plaintiff alleges that he was discharged from his employment on the basis of race and in retaliation for his complaints regarding race discrimination, all in violation of Title VII, 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a). Second, plaintiff alleges that his firing resulted in a deprivation of his right to have and enjoy a contract of employment with the same terms and security as that enjoyed by similarly situated white coworkers in violation of 42 U.S.C. § 1981. Third, plaintiff claims that the allegations set forth in his first cause of action also constitute a violation of the Minnesota Human Rights Act, Minn.Stat. § 363.03(7). Fourth, plaintiff alleges that defendants breached the implied terms of his employment contract which arose from Target's personnel policies upon which plaintiff relied. Fifth, plaintiff alleges that he was wrongfully discharged from his employment with Target in violation of public policy.

Defendants now move the Court to dismiss plaintiff's complaint. Defendants contend that plaintiff's causes of action for breach of an implied employment contract and wrongful termination, and plaintiff's cause of action under section 1981, are barred by the applicable statutes of limita-

tions. Defendants further contend that plaintiff's contract and wrongful discharge claims should be dismissed because there was never an employment contract between plaintiff and Schmidt and because those claims may not be pursued in light of the statutory remedies available under Title VII and the Minnesota Human Rights Act. Finally, defendants argue that plaintiff's statutory claims of retaliatory discharge are barred because the factual and legal bases of these claims were litigated in the prior action for preliminary relief instituted on plaintiff's behalf.

Jurisdiction is proper under 42 U.S.C. § 2000e–5(f)(3) for plaintiff's Title VII claim, and under 28 U.S.C. § 1343(4) for plaintiff's section 1981 claim. Further, the state statutory common law claims are properly before the Court under its pendent jurisdiction.

## DISCUSSION

### I. *Statute of Limitations Applicable to Plaintiff's Second Cause of Action Under 42 U.S.C. § 1981*

■ Defendants contend that plaintiff's second cause of action arising under 42 U.S.C. § 1981 is barred by the applicable statute of limitations. In support of their contention, defendants cite *Goodman v. Lukens Steel Co.,* — U.S. —, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) in which the Supreme Court held that section 1981 claims should be characterized as personal injury actions for the purpose of determining the appropriate state statute of limitations. Defendants argue based on the decision in *Goodman* that the two-year statute of limitations set forth in Minn.Stat. § 541.07(1) applies to plaintiff's section 1981 action.[1] Defendants further argue that because plaintiff's claim was filed more than two years after the cause of action under section 1981 arose, plaintiff's second cause of action under section 1981 is barred.

Plaintiff does not dispute defendants' assertion that plaintiff's complaint was filed more than two years after his cause of action under section 1981 arose. Plaintiff contends, however, that it would be unjust to apply retroactively the *Goodman* decision to his section 1981 claim because that decision was issued more than eight months after plaintiff filed his suit.

*Goodman* itself dealt with the issue of retroactive application of the newly-decided statute of limitations for section 1981 actions. In *Goodman,* the Supreme Court stated that "[t]he usual rule is that federal cases should be decided in accordance with the law existing at the time of decision." *Goodman,* 107 S.Ct. at 2621 (citations omitted). The Court recognized, however, that based on its holding in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971), "a decision specifying the applicable state statute of limitations ... should not be applied retroactively [where] the decision overruled clear Circuit precedent on which the complaining party was entitled to rely, ... the new limitations period [is] occasioned by a change in the substantive law the purpose of which would not be served by retroactivity, and ... retroactive application would be inequitable." *Goodman,* 107 S.Ct. at 2621. Despite its recognition that retroactive application of a statute of limitations is not always appropriate, the Court in *Goodman* held that its decision should be applied retroactively in the case before it.

The Court in *Goodman* emphasized the first of the three factors set forth in *Chevron,* that is, whether in choosing the applicable statute of limitations the Court overruled clear past precedent on which plaintiffs were entitled to rely. The Court held that " '[i]n 1973, when the complaint was filed in the *Goodman* case, there was no established precedent in the Third Circuit to indicate the appropriate limitations period for Section 1981 claims.' " *Goodman,* 107 S.Ct. at 2622, *quoting Al–Khazraji v.*

---

1. Minn.Stat. § 541.07 provides:
   Except where the uniform commercial code or this section otherwise prescribes, the following action shall be commenced within two years:

   ....
   (1) For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury....

*St. Francis College,* 784 F.2d 505, 512 (3d Cir.1986), *aff'd,* —— U.S. ——, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (distinguishing *Goodman,* in which retroactive application was appropriate, from a subsequently filed suit, in which retroactive application was not appropriate due to post–1973 precedent). Accordingly, the Court determined retroactive application of its decision to be appropriate. The Court further noted that such retroactive application would not frustrate any federal law or result in inequity to plaintiffs charged with knowledge that the appropriate limitations period was an unsettled question. *Goodman,* 107 S.Ct. at 2622.

In order for the Court to determine if the *Goodman* decision should be applied retroactively in the case at bar, the Court must examine the state of the law in the Eighth Circuit as it had developed up to the time plaintiff filed his complaint in October 1986. In 1982, the United States Court of Appeals for the Eighth Circuit held that a state's statute of limitations for statutory liability should govern claims under 42 U.S. C. § 1983. *See Garmon v. Foust,* 668 F.2d 400 (8th Cir.1982), *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982). Following *Garmon,* the Eighth Circuit specifically held that Minnesota's six-year statute of limitations for statutory liability should apply to section 1983 actions brought in Minnesota. *Occhino v. United States,* 686 F.2d 1302 (8th Cir.1982). While the holding in each of these cases was limited to actions brought under section 1983, the Eighth Circuit in *Garmon* explicitly recognized that its holding "may extend to actions under other sections of the Civil Rights Act, *e.g.,* §§ 1981, 1985." *Garmon,* 668 F.2d at 406 n. 12.

The rule set forth by *Garmon* and *Occhino* remained the law in the Eighth Circuit until the Supreme Court's decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In *Wilson,* 471 U.S. at 280, 105 S.Ct. at 1949, the Court ruled that "§ 1983 claims are best characterized as personal injury actions." Following *Wilson,* the United States District Court for the District of Minnesota has applied Minn.Stat. § 541.07(1), Minnesota's two-year statute of limitations for intentional torts, to section 1983 actions. *See Cook v. City of Minneapolis,* 617 F.Supp. 461, 463–65 (D.Minn.1985).

Although *Wilson* did not directly apply to section 1981 claims, the Supreme Court's opinion did foreshadow its ruling in *Goodman* that section 1981 claims are to be governed by the applicable state personal injury statute of limitations. For example, the Court in *Wilson* stated: "The relative scarcity of statutory claims when § 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted by many States." *Wilson,* 471 U.S. at 278, 105 S.Ct. at 1948. Such reasoning applies equally to section 1981 claims and suggests that the Supreme Court similarly might apply a uniform state personal injury statute of limitations to those claims. Further, the Supreme Court in *Wilson,* arguing that a section 1983 action was most analogous to an action for "personal injuries," cited its decision in *Runyon v. McCrary,* 427 U.S. 160, 179–82, 96 S.Ct. 2586, 2598–2600, 49 L.Ed.2d 415 (1976), where the Court affirmed a court of appeals decision applying a personal injury statute of limitations to a section 1981 action. Thus, while not explicitly holding that a state personal injury statute of limitations applies in all section 1981 actions, the Court in *Wilson* suggested that such might be the holding of a future case. Moreover, by effectively overruling *Garmon* and *Occhino, Wilson* rendered unreliable the reasoning of those cases and their suggestion that section 1981 claims should be governed by a statute of limitations for statutory liability.

. The varying treatment of section 1981 cases in other jurisdictions further undermined any reliance of plaintiff on previous precedent. Courts applied three different types of statutes of limitations to section 1981 cases. Several courts, such as the United States Court of Appeals for the Third Circuit in its opinion in *Goodman,* emphasizing the common origin of section 1983 and section 1981, held that a state's personal injury statute of limitations ap-

plied in both types of actions. *See, e.g., Goodman v. Lukens Steel,* 777 F.2d 113 (3d Cir.1985). Other courts, focusing on the protection section 1981 provides against racial discrimination in contractual relationships, held that a state's statute of limitations for contract actions is most appropriate. *See, e.g., Nazaire v. Trans World Airlines, Inc.,* 807 F.2d 1372 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987). Finally, some courts held that a limitations period for negligence actions is appropriate because such a period both recognizes the personal character of injuries redressed by section 1981 yet distinguishes such injuries from those intentionally inflicted injuries that are redressed primarily through section 1983. *See, e.g., Banks v. Chesapeake and Potomac Telephone Co.,* 802 F.2d 1416 (D.C.Cir.1986). Given the disparity among courts reflected by the above cited decisions and the implication of the *Wilson* decision for section 1981 actions, plaintiff cannot reasonably argue that he based his tardy filing on established precedent.

The court's decision in *Rhodes v. Northwestern Bell Telephone Co.,* 656 F.Supp. 946 (D.Minn.1987), supports the retroactive application of Minn.Stat. § 541.07(1) to plaintiff's section 1981 claim. In *Rhodes,* plaintiff brought a section 1981 race discrimination action against his employer. The defendant employer moved for dismissal of plaintiff's claim on statute of limitations grounds. In a published order issued before the Supreme Court's decision in *Goodman,* the court refused to dismiss plaintiff's section 1981 on the strength of the *Wilson* decision alone. *Rhodes,* 656 F.Supp. 946, 949–50. However, the Court granted a subsequent motion for partial

judgment on the pleadings brought by defendant after the *Goodman* decision. In its order dated August 25, 1987, the Court held that the *Goodman* decision should be given retroactive effect in Minnesota because no clear precedent previously existed on which plaintiff could rely in bringing his action. *Rhodes,* at 948. Thus in *Rhodes,* the Court applied the *Goodman* decision retroactively despite the fact that the plaintiff had filed his suit well before the decision was issued. Likewise in the case at bar, the Court will apply the *Goodman* decision retroactively and bar plaintiff's section 1981 claim for failure to file such claim within the limitations period prescribed by Minn.Stat. § 541.07(1).

## II. *Statute of Limitations Applicable to Plaintiff's Fourth Cause of Action for Breach of Personnel Policies*

In his fourth cause of action, plaintiff alleges that Target's personnel policies created an implied employment contract which Target breached by terminating plaintiff's employment. This type of action was recognized by the Minnesota Supreme Court in *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983), where the court held that an employee may bring a contract action against an employer or former employer for damages resulting from the employer's failure to follow its own established personnel policies. Defendants in their motion to dismiss argue based on *Portlance v. Golden Valley State Bank,* 405 N.W.2d 240 (Minn.1987), that the two-year statute of limitations contained in Minn.Stat. § 541.07(5) applies to *Pine River* actions.[2] Defendants contend that because plaintiff filed his *Pine River*

---

**2.** Minn.Stat. § 541.07 provides:

Except where the uniform commercial code or this section otherwise prescribes, the following actions shall be commenced within two years:

....

(5) For the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties except, that if the employer fails to submit payroll records by a specified date upon request of the department of labor and

industry or if the nonpayment is willful and not the result of mistake or inadvertence, the limitation is three years. (The term "wages" means all remuneration for services or employment, including commissions and bonuses and the cash value of all remuneration in any medium other than cash, where the relationship of master and servant exists and the term "damages," means single, double, or treble damages, accorded by any statutory cause of action whatsoever and whether or not the relationship of master and servant exists)....

action more than two years after the cause of action accrued, plaintiff's action is barred by Minn.Stat. § 541.07(5).

Plaintiff does not dispute that his *Pine River* cause of action arose more than two years before he filed suit. Plaintiff contends, however, that the application of Minn.Stat. § 541.07(5) to his action is unfair because the *Portlance* decision issued in the spring of 1987, well after the time he filed suit. Plaintiff argues that prior to the Minnesota Supreme Court's decision in *Portlance,* he had no reason to believe that the general statute of limitations for contract actions, Minn.Stat. § 541.05, subd. 1, would not apply. ,

The Court finds plaintiff's contentions to be without merit. As outlined in the Court's opinion in *Griffin v. American Motors Sales Corp.,* 618 F.Supp. 455 (D.Minn. 1985), plaintiff had every reason to believe that his *Pine River* cause of action would be governed by the two-year limitations period contained in Minn.Stat. § 541.07(5). In *Griffin,* plaintiff brought a *Pine River* action for wrongful discharge alleging breach of a de facto employment contract based on manuals, policy statements and oral assurances of the defendant employer. The defendant brought a motion for summary judgment arguing that plaintiff's action was barred by the two-year statute of limitations contained in Minn.Stat. § 541.07(5). In holding plaintiff's action to be barred by Minn.Stat. § 541.07(5), the Court stated that "the Minnesota courts [have] clearly established that an action for breach of a contract of employment, whether oral or written, is governed by the two-year limitations period of Minn.Stat. § 541.07(5)." *Griffin,* 618 F.Supp. at 457. In support of its holding, the Court cited *Kohout v. Shakopee Foundry Co.,* 281 Minn. 401, 162 N.W.2d 237 (1968) (claim for breach of collective bargaining agreement governed by the two-year limitations period of section 541.07(5)); *Roaderick v. Lull Engineering Co.,* 296 Minn. 385, 208 N.W. 2d 761 (1973) (section 541.07(5) limitations period applied to claim for breach of an

oral contract of employment); and *Worwa v. Solz Enterprises, Inc.,* 307 Minn. 490, 238 N.W.2d 628 (1976) (claim for breach of an oral contract of employment was essentially a section 541.07(5) wages action, not a section 541.05 contract action). The Court in *Griffin* held that although these cases predated *Pine River* they were sufficiently analogous to indicate that the section 541.07(5) two-year limitations period was properly applied to *Pine River* actions. *Griffin,* 618 F.Supp. at 458–59. Accordingly, in the case at bar the Court finds plaintiff's fourth cause of action for breach of personnel policies to be barred by the two-year limitations period of Minn.Stat. § 541.07(5).

Defendants further contend that plaintiff's fourth cause of action must be dismissed as against defendant Schmidt because, even if Target's personnel policies created an implied employment contract, Schmidt was not a party to the contract and cannot be held liable for its breach. Based on the foregoing analysis, because plaintiff's fourth cause of action is barred by the applicable statute of limitations, the Court need not consider defendants' contention regarding the liability of Schmidt.

## III. *Applicable Statute of Limitations for Plaintiff's Fifth Cause of Action Alleging Wrongful Discharge*

██ Defendants move the Court to dismiss plaintiff's fifth cause of action as barred by all applicable statute of limitations periods. Defendants contend that if the wrongful discharge claim is characterized as a contract action, the claim is barred as exceeding the two-year limitations period prescribed by Minn.Stat. § 541.07(5).[3] *See Portlance v. Golden Valley State Bank,* 405 N.W.2d 240 (Minn. 1987). In the alternative defendants contend that if the wrongful discharge claim is characterized as a tort action, the claim is barred by the two-year limitations period codified in Minn.Stat. § 541.07(1).[4]

---

**3.** *See* discussion of Minn.Stat. § 541.07(5), *supra* section II.

**4.** For text of Minn.Stat. § 541.07(1) see footnote 1, *supra.*

Plaintiff does not respond directly to defendants' contention that plaintiff's wrongful discharge claim is barred under either the statute of limitations for employment contract actions (Minn.Stat. § 541.07(5)) or the statute of limitations for intentional torts (Minn.Stat. § 541.07(1)). Plaintiff instead contends that his fifth cause of action sounds neither in contract nor in tort, but rather is a statutory action under Minn. Stat. § 181.932, subd. 1(a) which was recently enacted by the Minnesota Legislature.[5] Accordingly, plaintiff contends that his claim of wrongful discharge is governed by the six-year limitations period established for statutory actions by Minn. Stat. § 541.05, subd. 1(2).[6] Plaintiff therefore argues that he timely filed his wrongful discharge claim.

Plaintiff's fifth cause of action cannot be characterized as a statutory claim governed by the six-year limitations period set forth in Minn.Stat. § 541.05 subd. 1(2). Plaintiff's cause of action arose on September 7, 1984 when his employment was terminated by Target. Minn.Stat. § 181.932, subd. 1(a), under which plaintiff purports to proceed, was not in force at the time of the termination and was not enacted by the Minnesota Legislature until 1987. Minn. Stat. § 645.21 provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn.Stat. § 181.932, subd. 1(a) provides no indication that it was intended to apply retroactively. Although section 181.-932, subd. 1(a) embodies a noble purpose and is remedial in nature, it may not be applied retroactively absent a clearly expressed legislative intent. *See In re Breole's Estate*, 298 Minn. 116, 212 N.W.2d 894 (1973). Minn.Stat. § 181.932, subd. 1(a) evinces no such intent.

Because section 181.932 cannot be applied retroactively, plaintiff's fifth cause of action cannot be characterized as a statutory claim governed by the six-year limitations period established for such claims. Instead, plaintiff's wrongful discharge claim is subject to either the two-year period for employment contract actions or the like period for tort claims. Under either of these statutes of limitations, plaintiff's fifth cause of action is barred. Accordingly, the Court will dismiss plaintiff's fifth cause of action.

Defendants have advanced an additional argument supporting dismissal of plaintiff's fifth cause of action. Defendants contend that plaintiff cannot maintain a common law wrongful discharge action because plaintiff is limited to the statutory remedies set forth in the Minnesota Human Rights Act and Title VII. Based on the foregoing analysis, because plaintiff's fifth cause of action is barred by the applicable statute of limitations, the Court need not address defendants' contention.[7]

## IV. *Preclusive Effect of Order Denying Preliminary Relief*

In his first cause of action, plaintiff sets forth two bases for relief under Title VII. First, plaintiff asserts that he was discharged on the basis of his race in violation of 42 U.S.C. § 2000e–2(a)(1). Plaintiff further alleges that he was dis-

---

**5.** Minn.Stat. § 181.932, subd. 1(a) provides:

An employer shall not discharge, discipline, threaten, or otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(a) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official....

**6.** Minn.Stat. § 541.05, subd. 1(2) provides:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:

....

(2) Upon a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07....

**7.** Plaintiff's only response to defendants' additional argument in support of dismissal is to argue that his fifth cause of action is a protected statutory claim brought under Minn.Stat. § 181.932, subd. 1(a). As discussed above, plaintiff's reliance on section 181.932, subd. 1(a) is flawed as this section may not be applied retroactively to cover defendants' alleged wrongful termination of plaintiff's employment.

charged in retaliation for his complaints regarding race discrimination in violation of 42 U.S.C. § 2000e–3(a). Plaintiff's third cause of action under the Minnesota Human Rights Act similarly seeks relief on the grounds of discrimination on the basis of race and alleged termination in reprisal for plaintiff's contacts with the EEOC. In their motion to dismiss, defendants contend that plaintiff is precluded from bringing any claim for retaliatory discharge under Title VII or the Minnesota Human Rights Act because of an earlier ruling in an action brought by the EEOC on plaintiff's behalf.

Acting in response to plaintiff's charge of retaliatory discharge and pursuant to section 706(f)(2) of Title VII, the EEOC initiated an action for injunctive relief on behalf of plaintiff in the United States District Court for the District of Minnesota. In so acting, the EEOC sought to mitigate any chilling effect plaintiff's discharge would have had on other Target employees who might choose to report acts of discrimination to the EEOC. The EEOC thus sought to protect its viability as an agency for redressing employee discrimination complaints. Upon de novo review of the report and recommendation of the United States Magistrate, the court denied the EEOC's request for a preliminary injunction by order dated January 17, 1985. Defendants now contend that the court's order is a valid, final judgment on the merits which precludes plaintiff from relitigating matters related to his alleged retaliatory discharge. Defendants argue that although plaintiff had a right to intervene in the suit brought by the EEOC, he failed to timely assert his rights and thus should be barred from bringing the present action. Defendants contend that it would be manifestly unfair to subject them to another action for retaliation at this late date and thus seek dismissal of plaintiff's claims of retaliatory discharge.

The Court finds defendants' argument unpersuasive. Generally, in order to have preclusive effect, a court order must be a final decision on the merits. *See* 1B *Moore's Federal Practice* par. 0.401[1], 0.441[2]. The granting or denial of a pre-liminary injunction is generally not based on a final judgment on the merits and is not a final judgment for estoppel purposes. *Medtronic, Inc. v. Gibbons,* 684 F.2d 565, 569 (8th Cir.1982). The order at issue in the case at bar is not an exception to the general rule. In the order, the court specifically states:

> The hearing before [the magistrate] was not a trial on the merits, but a preliminary injunction hearing. At such an early stage, the magistrate and the reviewing court should avoid deciding with any degree of certainty who will ultimately prevail.

> At this stage in the proceedings, the Court is only determining whether a preliminary injunction may properly issue. It is not making any ultimate factual findings or legal conclusions.

*EEOC v. Target,* No. 4–84–963, slip op. at 8 n. 6, 11 (D.Minn. Jan. 17, 1985). Further, the court stated that "[t]he EEOC and Rice will have a full opportunity to prove that unlawful retaliation occurred and to vindicate the public's interest in enforcing Title VII during trial on the merits." *Id.* at 10–11. Plaintiff correctly points out that if the order denying preliminary relief were given preclusive effect, litigants would be discouraged from seeking preliminary relief for fear that they later would be precluded from obtaining a complete hearing at trial. This in turn would force plaintiffs to accept possible irreparable harm and needlessly await vindication of their interests.

Defendants argue that plaintiff failed to vigorously press his claims in a timely manner such that defendants are being forced unfairly to defend a stale action. Defendants cite plaintiff's failure to bring the instant suit until more than a year and a half after the ruling on preliminary relief as evidence that plaintiff allowed his rights to languish. The Court finds that plaintiff acted in a timely fashion. For some time after the order in question was issued, the EEOC was investigating plaintiff's claims of discrimination. In fact, the EEOC's determination of reasonable cause was not issued until December 11, 1985. Moreover,

the issuance of the determination did not signal plaintiff to immediately file suit. Instead, the determination "invite[d] the parties to join with [the EEOC] in a collective effort toward a just resolution of the matter." Complaint Exhibit B at 2. Thus the EEOC clearly intended that a process of conciliation take place that would resolve the matter and render litigation unnecessary. Only after the conciliation effort failed did the EEOC notify plaintiff of his right to sue. *See* Complaint Exhibit C. Thereafter plaintiff filed suit within the ninety days required by notice of right to sue. Thus it is apparent that plaintiff did not allow his claim to become stale but merely followed the logical procedure for resolving a claim of employment discrimination. Similarly, by not intervening in the action brought by the EEOC, plaintiff was not stalling the proceedings but merely availed himself of the administrative protection afforded him under Title VII. Accordingly, the Court will not dismiss plaintiff's claims of retaliatory discharge.

The Court finds no basis for an award of costs and attorneys' fees and thus will deny defendants' motion for such relief.

Based on the foregoing, and on all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that

1. defendants' motion to dismiss plaintiff's second, fourth and fifth causes of action is granted and those causes of action are hereby dismissed;

2. defendants' motion to dismiss plaintiff's claims of retaliatory discharge under Title VII and the Minnesota Human Rights Act set forth in plaintiff's first and third causes of action is denied; and

3. defendants' motion for costs and attorneys' fees is denied.